2011 ME 93

**Sarah GRAHAM**

v.

**Shyam BROWN.**

Supreme Judicial Court of Maine.

Submitted on Briefs: June 1, 2011.

Decided: Aug. 23, 2011.

---

6. Burns does not raise the court's percentage approach on appeal.

John Alsop, Esq., Alsop & Mohlar, Skowhegan, ME, for Shyam Brown.

Robert E. Sandy, Jr., Esq., Sherman & Sandy, Waterville, ME, for Sarah Graham.

Panel: SAUFLEY, C.J., and LEVY, SILVER, MEAD, and JABAR, JJ.

LEVY, J.

[¶ 1] Shyam Brown appeals from a default judgment entered in the District Court (Skowhegan, *Kelly, J.*) awarding Sarah Graham $50,000 in compensatory damages and $5000 in punitive damages for intentional infliction of emotional distress after an entry of default on the issue of liability and a hearing on the issue of damages. Brown contends that (1) the court abused its discretion in declining to set aside the entry of default; (2) the court erred in entering the default judgment because the evidence did not support, and the court did not expressly find, each element of the tort of intentional infliction of emotional distress; and (3) the damages awarded were excessive and not supported by the evidence. We affirm the judgment.

## I. BACKGROUND

[¶ 2] The following facts, found by the court, are supported by competent evidence in the record. *See Degenhardt v. EWE Ltd. P'ship*, 2011 ME 23, ¶ 2, 13 A.3d 790, 792.

[¶ 3] Graham and Brown began cohabiting in April 2003. From April 2004[1] until the couple separated in July 2006, Brown committed frequent acts of physical and emotional abuse against Graham. The acts committed included throwing her across a room so that she fell on her face and jaw, and nearly fell twelve feet into a basement; aggressively pulling Graham out of her truck, causing bruising on her arm; striking her hand with a drum stick, injuring her hand when he knew that she was studying to become a massage therapist and would need the use of her hands; refusing Graham assistance when she developed a uterine infection after an abortion, and telling her that she deserved to die; refusing her assistance after she had a miscarriage and telling her that she deserved the miscarriage and deserved to bleed to death; shoving Graham backwards into a cement step, resulting in injuries to her back and spine; on multiple occasions, hitting, slapping, or head-butting Graham during arguments; on several occasions, punishing her young son in front of her by covering his mouth so that he could not breathe; on several occasions, emptying onto the driveway potted plants that Brown knew were important to Graham; and throwing Graham's cat against a chimney because it annoyed him.

[¶ 4] In 2005, Graham sought treatment from a psychotherapist for her emo-

---

1. The court correctly determined that events occurring before this date would be outside the six-year statute of limitations. *See* 14 M.R.S. § 752 (2010).

tional distress. The therapist diagnosed Graham as suffering from post-traumatic stress disorder, anxiety disorder, depression, and insomnia, all resulting from Brown's actions. Although Graham is licensed as a massage therapist, her emotional condition has prevented her from engaging in that work and she has instead worked for less pay as a retail clerk.

[¶ 5] On April 8, 2010, Graham caused Brown to be served in hand with a summons and complaint alleging physical, emotional, and mental abuse, and seeking compensatory and punitive damages. Brown did not file an answer. On May 7, the clerk of the court entered a default against Brown. *See* M.R. Civ. P. 55(a). The court subsequently held a hearing on damages, at which Brown appeared and participated without counsel. *See* M.R. Civ. P. 55(b)(2).

[¶ 6] At the outset of the damages hearing, the court explained to Brown that the issue of liability had already been determined against him because he did not respond to the complaint.[2] Brown stated that he did not respond to the complaint because he "thought it was absurd" and he was "not good at paperwork." Brown thought that he would be able to address the complaint at the hearing. The court informed Brown that he could move to set aside the entry of default, but that the scheduled hearing would focus on damages. After receiving testimony from Graham, Brown, and two other individuals, the court established a schedule for the parties to submit memoranda regarding the calculation of Graham's damages.

[¶ 7] The court ultimately entered a written judgment with findings that Graham suffered damages of $9600 for her past and future therapy expenses and $14,000 for her lost income. Based on these financial losses and the general damage resulting from the distress inflicted by Brown, the court awarded Graham total compensatory damages of $50,000.

[¶ 8] Graham sought $30,000 in punitive damages. With respect to punitive damages, the court found that the "nature and frequency of the acts of abuse and domestic violence ... provide clear and convincing evidence that Mr. Brown's conduct towards Ms. Graham was so outrageous that malice ... can be implied." The court concluded that Brown's conduct was egregious, he failed to take responsibility for his actions, and he tried to blame Graham for his behavior. Because there was no evidence presented regarding Brown's ability to pay, the court limited its award of punitive damages to $5000. This appeal followed.

## II. LEGAL ANALYSIS

[¶ 9] Brown contends that the court erred in (1) declining to set aside the entry of default; (2) entering a default judgment; and (3) determining the amount of Graham's damages.

### A. Entry of Default

[¶ 10] Because Brown failed to file a motion to set aside the entry of default as the court instructed, he did not preserve this issue for appellate review.[3]

---

**2.** Although the court referred to the entry of default as a "default judgment," the characterization resulted in no prejudice to Brown and is inconsequential to our analysis. *Compare* M.R. Civ. P. 55(a) (providing for entry of default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend"), *with* M.R. Civ.

P. 55(b) (providing procedure for determination of damages and for entry of judgment by default).

**3.** Brown did ultimately file a motion for relief from the entry of default pursuant to M.R. Civ. P. 60(b). That motion, however, is not

*See Farley v. Town of Washburn,* 1997 ME 218, ¶ 5, 704 A.2d 347, 349. However, even if we treat the issue as having been preserved, the court did not abuse its discretion by declining to set aside the entry of default because Brown's justifications for not filing an answer—that he viewed the complaint as "absurd" and that he is "not good at paperwork"—do not constitute "good cause" pursuant to Rule 55(c). *See* M.R. Civ. P. 55(c); *Richter v. Ercolini,* 2010 ME 38, ¶¶ 15–16, 994 A.2d 404, 409.

### B. Default Judgment

[¶ 11] Contrary to Brown's contention, the court did not err by holding that Brown was liable for intentional infliction of emotional distress and entering a default judgment accordingly. The court properly construed Graham's complaint as one for intentional infliction of emotional distress (IIED). *See Lyman v. Huber,* 2010 ME 139, ¶ 16, 10 A.3d 707, 711. Because the issue of liability was resolved against Brown by the entry of default, he was properly precluded from relitigating any of the elements of liability related to the IIED claim, and the court was not required to issue findings regarding those elements. *See* M.R. Civ. P. 55(b)(2). At the hearing, the sole issue before the court was damages. *See Estate of Hoch v. Stifel,* 2011 ME 24, ¶¶ 17–18, 46, 16 A.3d 137, 145, 152.

### C. Compensatory and Punitive Damages

[¶ 12] Brown argues that the damages awarded were excessive and not supported by the evidence. Our review of an award of damages is highly deferential, and although an award must be supported by some evidence of the amount of loss, "damages need not be proved to a mathematical certainty." *Estate of Hoch,* 2011 ME 24, ¶ 43, 16 A.3d at 150–51 (quotation

marks omitted); *Palleschi v. Palleschi,* 1998 ME 3, ¶ 6, 704 A.2d 383, 385. "Proof of financial loss need not be proffered for a court to award compensatory damages for the intentional infliction of emotional distress." *Palleschi,* 1998 ME 3, ¶ 6, 704 A.2d at 385. In addition, a "plaintiff need not present evidence of a defendant's financial circumstances for a fact-finder to consider an award of punitive damages." *Estate of Hoch,* 2011 ME 24, ¶ 53, 16 A.3d at 153–54.

[¶ 13] Here, the court based slightly less than half of the compensatory award on actual damages. The balance of the $50,000 award was for "general damage suffered by Ms. Graham." Based on competent evidence in the record supporting the numerous incidents of abuse and resulting injuries found by the court, and the clear and convincing evidence in the record that Brown's conduct was so outrageous that malice can be implied, it is not "plain that there is no rational basis upon which the amount of the award may be supported." *Id.* ¶ 43, 16 A.3d at 151 (quotation marks omitted). Accordingly, the court did not err in its determination of compensatory damages.

[¶ 14] Nor was the punitive damages award of $5000 excessive considering (1) the reprehensibility of Brown's acts; (2) the one-to-ten ratio of punitive to compensatory damages; and (3) the amount of the punitive damages award compared to other punitive damages awards. *See id.* ¶¶ 54, 56–60, 16 A.3d at 154; *Harris v. Soley,* 2000 ME 150, ¶ 33 & n. 21, 756 A.2d 499, 509 (affirming a $1 million punitive damages award that was sixteen times the award of compensatory damages for conversion and IIED, and noting jurisdictions allowing ratios as high as 100:1); *Shrader–Miller v. Miller,* 2004 ME 117, ¶¶ 10, 21,

part of the record on appeal and we do not     address it in considering the issues presented.

24, 855 A.2d 1139, 1142, 1145–46 (affirming a $10,000 punitive damages award in a 7:1 ratio to compensatory damages related to defendants' malicious actions intended to lower the sale value of a property).

The entry is:

Judgment affirmed.