MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 167
Docket:      Yor-16-194
Argued:      December 13, 2016
Decided:     July 25, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

RENEE LEGRAND et al.

v.

YORK COUNTY JUDGE OF PROBATE[1]

HJELM, J.

[¶1]  Renee LeGrand and other class action members appeal from a judgment entered by the Superior Court (York County, *Warren, J.*) declining to grant declaratory and injunctive relief from alleged deprivations of constitutional rights arising from the York County Probate Court schedule ordered by former York County Probate Judge Robert M.A. Nadeau.[2]  LeGrand argues that delays in court proceedings caused by the court schedule violated class members' rights to meaningful access to the courts and to substantive due process.  Judge Nadeau argues that the plaintiffs' claims are moot because

---

[1]  For the reasons we discuss below, *see infra* ¶¶ 21-24, we have recaptioned this case to identify the York County Judge of Probate, rather than Judge Robert M.A. Nadeau, as the defendant.

[2]  Judge Nadeau was not reelected to the position of York County Probate Judge, and he left office effective January 1, 2017.  Although he is no longer a judge, throughout this opinion we refer to him by that title because he was serving in a judicial capacity during the events relevant here.

2

he is no longer a judge of probate and that, in any event, the Superior Court did not err on the merits.[3]  We conclude that this appeal is not moot and, reaching the merits, affirm the judgment.

## I.  BACKGROUND

[¶2]  The court found the following facts, which are supported by competent evidence in the record.[4]  *See Graham v. Brown*, 2011 ME 93, ¶ 2, 26 A.3d 823.

A.  Schedule Changes at the Probate Court

[¶3]  Judge Nadeau was elected York County Probate Judge in 2012 and held that office from 2013 to 2016, after having previously served in the same position from 1997 to 2008.  Maine's probate court judges hold judicial office on a part-time basis, and York County funds the position for eight days, or sixty-four hours, per month.  When Judge Nadeau began his term in 2013, he and Register of Probate Carol Lovejoy agreed to schedule court days on

---

[3]  Judge Nadeau also states that the question of whether this appeal is interlocutory "is not entirely free from doubt" because the trial court did not act on his motion to dismiss LeGrand's complaint as moot until after LeGrand filed a notice of appeal.  In a post-judgment order, however, the court expressly stated that the judgment itself constituted a denial of the motion to dismiss.  Given that clarification, the judgment is final, and we do not further address Judge Nadeau's interlocutoriness argument.

[4]  A number of the events underlying this action are also the subject of a recent judicial disciplinary decision involving Judge Nadeau.  *See In re Nadeau*, 2017 ME 121, --- A.3d ---.  To the extent that our reports of the facts in this case and in the disciplinary case are not identical, it is because these are distinct proceedings with separate evidentiary records.

Wednesdays and Thursdays each week, with three Wednesdays of the month dedicated to routine matters, and all Thursdays and the last Wednesday of every month set aside for contested hearings.

[¶4] On April 1, 2015, Judge Nadeau made a presentation at a York County Commissioners' meeting where the Probate Court budget for fiscal year 2016 was being considered. He advocated for an increase in funding so that the probate judge's schedule would expand from eight days per month to three days per week, or, alternatively, five days per week, which would make the judgeship a full-time position. Corresponding with these proposed changes, Judge Nadeau recommended an increase in his salary from $48,498 to $90,000 or $119,476, respectively. The Commissioners tabled the issue, but at their next meeting, held on April 15, 2015, they decided to maintain the current number of hours for the probate judge. Nonetheless, they raised Judge Nadeau's salary to $54,206.

[¶5] Judge Nadeau left the meeting almost immediately after the Commissioners made that decision. A few minutes later, he emailed Register Lovejoy from his cell phone with instructions to make certain changes to his court schedule. In another email sent later that night, Judge Nadeau altered the schedule more significantly, directing Lovejoy to reschedule Probate Court

4

from Wednesdays and Thursdays to Mondays and Fridays, starting the following week. In yet another email sent the next morning, Judge Nadeau changed the schedule again and directed Lovejoy to implement a trailing trial list with one full week each month dedicated to trials, plus two or three nontrial days each month. Two days later, on April 18, Judge Nadeau sent an email making further scheduling changes that included reserving one court day per month for research and writing.

[¶6] In some of his communications with Lovejoy regarding the schedule changes, Judge Nadeau expressed his resentment that the County had been unwilling to support what he considered necessary additional court time. As the Superior Court noted in its findings, Judge Nadeau testified that he was "upset" and "disappointed" that the Commissioners declined to grant his request to increase funding for the position he held.

[¶7] Because Judge Nadeau directed that the schedule changes be implemented immediately, all previously scheduled cases had to be assigned different hearing dates, resulting in delays before those cases could be heard. The shift in the court schedule to Mondays and Fridays also resulted in decreased court time because more holidays fall on those days—a

consequence that Judge Nadeau knew would result when he made the change. As the Superior Court found:

> Although Judge Nadeau stated that his schedule changes were made to serve litigants, he knew that the schedule changes would cause or exacerbate delays that would harm those litigants. In large part, the schedule changes were intended to get back at the County Commissioners who had rejected Judge Nadeau's request for an increase in salary and court time.

[¶8]  To assist with the growing and "essentially self-inflicted" backlog of cases, Judge Nadeau appointed probate judges from other counties to serve as referees and hear eleven contested York County cases. Additionally, as of the time of the trial in this matter, Judge Nadeau had recently decided to schedule court several times on the Tuesday after a Monday holiday to make up for the lost day, and to dedicate some time on Fridays to routine matters—changes that the Superior Court found were likely motivated in part by this case.

[¶9]  Over time, the altered schedule and appointment of referees cleared a backlog of contested matters, including emergency hearings and trials, because the practice of multi-day trailing trial lists resulted in more settlements and quicker resolutions of contested cases. The schedule changes ordered by Judge Nadeau, however, reduced the amount of court time available for uncontested cases, particularly during the remainder of 2015.

6

For such routine matters, the schedule changes created delays of approximately three months. Throughout this period, Judge Nadeau recommended that litigants appearing in the York County Probate Court contact the County Manager and Commissioners if they were frustrated by court delays.

B. LeGrand's Probate Court Case

[¶10] In December 2014, Renee LeGrand, the named plaintiff in this action, filed for joint or sole guardianship of her granddaughter in the York County Probate Court, alleging that her daughter was unfit to act as a parent to the granddaughter. *See* 18-A M.R.S. § 5-204 (2016). In March 2015, Judge Nadeau issued an order, effective until August 31, 2015, granting LeGrand temporary guardianship of the child. *See* 18-A M.R.S. § 5-207(c) (2016). A hearing on LeGrand's petition for permanent guardianship was scheduled for July and then for August 2015, but the hearing was not held due to scheduling conflicts attributable both to the court and to the attorneys.[5]

[¶11] On August 28, 2015, LeGrand filed a motion to extend the duration of the temporary guardianship. In September, Judge Nadeau

[5] The parties disputed whether the guardianship hearing was delayed during the summer of 2015 because the child's father had not been properly served with process. The Superior Court found, however, that "where circumstances warranted, Judge Nadeau had previously held hearings and issued guardianship orders that would be subject to later reconsideration," suggesting that the delay was not caused by issues regarding service on the father.

assigned LeGrand's case to a probate judge from another county to act as a referee. *See* M.R. Prob. P. 53; M.R. Civ. P. 53(a). By this point, the temporary guardianship had expired, and in late October 2015 LeGrand's daughter reasserted legal custody of the child. While the child was living with LeGrand's daughter, the daughter and her partner were arrested in front of the child, causing the child to experience emotional harm, according to LeGrand. In January 2016, LeGrand and her daughter reached an agreement for co-guardianship, wherein the child would reside primarily with LeGrand. The agreement was filed with the court and issued as an order on February 1, 2016, effectively resolving the guardianship dispute while this case was pending in the Superior Court.

C.      The Class Action Suit

[¶12]  On December 2, 2015, LeGrand filed a complaint against Judge Nadeau in the Superior Court, along with motions for class certification, for a temporary restraining order and preliminary injunction, and for an expedited hearing. She filed the action on behalf of herself "and all others similarly situated," whom she described as individuals adversely affected by scheduling practices in the York County Probate Court. The complaint, as subsequently amended, alleged that Judge Nadeau's alteration of the York County Probate

Court schedule interfered with the plaintiffs' right of meaningful access to the courts in violation of the First Amendment and the Due Process Clause of the U.S. Constitution, and article I, sections 6-A and 15 of the Maine Constitution; and violated the plaintiffs' substantive due process rights.[6] On those grounds, LeGrand sought declaratory and injunctive relief that would require Judge Nadeau to reinstate the schedule he had replaced. LeGrand also named York County as a party-in-interest because the relief she sought would affect the operations and budget of the York County Probate Court.

[¶13] Judge Nadeau did not file an opposition to LeGrand's motion for class certification, and in an order issued in late December 2015, the court granted the motion, *see* M.R. Civ. P. 23, ordering that the class would comprise "all litigants who presently are or may in the future be harmed by alleged delays in the York County Probate Court as a result of the scheduling decisions alleged in . . . plaintiff's . . . amended complaint."

[¶14] Judge Nadeau's response to the complaint included a motion to dismiss based on judicial immunity, which the court denied.[7] Additionally, in

---

[6] LeGrand subsequently refined the constitutional claims as we address them in this opinion, alleging violations of the rights to open courts; meaningful access to courts, *see infra* n.11; and substantive due process.

[7] Judge Nadeau's responsive pleading also included a cross-claim against York County and a third-party complaint against Lovejoy and the York County Manager. The court ultimately

February 2016, Judge Nadeau moved to dismiss the class members' claims against him and to decertify the class, on the ground that the claims had become moot because the underlying Probate Court actions involving LeGrand and other class members had been resolved.

[¶15]  While those motions remained pending, in February 2016, the court held a three-day consolidated hearing on the complaint and the motion for preliminary injunctive relief.  In the resulting judgment issued on March 29, 2016, the court found in favor of Judge Nadeau.  The court concluded that the class members had not been denied access to the Probate Court to an extent that affected their constitutional rights to open courts and procedural due process.  As for the substantive due process claim, the court did not reach the question of whether Judge Nadeau's actions violated that right.  Rather, the court concluded that any relief it could grant based on any such violation would not serve a useful purpose because, in part, the schedule changes had a "beneficial effect" on some categories of cases, and, "most importantly," the Superior Court was "simply not well equipped to intervene" in the Probate Court's scheduling decisions, which are based on fluctuating demands and resources.

---

dismissed all of those claims, leaving for adjudication only the claims in the complaint.  Judge Nadeau has not cross-appealed from the dismissal of his claims.

[¶16] The judgment recognized but did not explicitly rule on Judge Nadeau's motions to dismiss the complaint and to decertify the class. In response to a post-judgment motion filed by Judge Nadeau, however, the court issued an order clarifying that it had denied those motions and intended the March 29 order to serve as a final judgment. LeGrand timely appealed. *See* M.R. App. P. 2(b)(3).

[¶17] While the appeal was pending, Judge Nadeau filed with us a motion to dismiss LeGrand's appeal, contending in part that the case became moot when he lost the November 2016 election for the probate judgeship. We ordered that the motion would be considered with the merits of the appeal.

## II. DISCUSSION

[¶18] We first consider Judge Nadeau's mootness-based challenges to the justiciability of the claims asserted against him. Because we conclude that the claims are justiciable, we then address the merits of those claims.

A. Mootness

[¶19] Judge Nadeau argues that this action is moot and should be dismissed because he lost his reelection campaign in November 2016 and because all the Probate Court cases involving class members have been adjudicated.

[¶20] "To determine whether a case is moot, we examine whether there remain sufficient practical effects flowing from the resolution of the litigation to justify the application of limited judicial resources. We decline to decide issues . . . when a decision by this Court would not provide an appellant any real or effective relief." *Clark v. Hancock Cty. Comm'rs*, 2014 ME 33, ¶ 11, 87 A.3d 712 (alteration omitted) (citation omitted) (quotation marks omitted).

1. Effect of the 2016 Election Results

[¶21] Judge Nadeau's loss in the 2016 election for York County Probate Judge, while this appeal was pending, does not render this action moot because "[w]hen a public officer is a party to an action in an official capacity and during its pendency . . . ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party." M.R. Civ. P. 25(d)(1).

[¶22] This action was filed against Judge Nadeau in his official capacity as York County Probate Judge, as is demonstrated by the allegation in the complaint that "Judge Nadeau is a government official and has no rational basis . . . for interfering with [p]laintiffs' right to petition." That Judge Nadeau was sued in his official capacity is further shown in a pretrial order issued by

the court—a ruling that Judge Nadeau does not challenge here—denying his motion to dismiss based on judicial immunity. In that order, the court explained that because Judge Nadeau was sued in his official capacity only for equitable relief, he is not entitled to immunity. Consequently, pursuant to Rule 25(d)(1), Judge Nadeau's departure from judicial office does not render this action moot.

[¶23]  Rule 25(d)(1) requires that in these circumstances, the current office-holder be substituted for the former official. *See Profit Recovery Grp., USA, Inc. v. Comm'r, Dep't of Admin. & Fin. Servs.*, 2005 ME 58, ¶ 1 n.1, 871 A.2d 1237. This substitution is automatic. *Qualey v. Fulton*, 422 A.2d 773, 774 n.1 (Me. 1980) ("The provisions of M.R. Civ. P. 25, relating to substitution of parties, appear to require in all circumstances contemplated by the rule, *save one*, a motion and an order thereon of the court to accomplish the substitution of a party. The single exception is in the case of the death or separation from office of a public officer named as a party." (emphasis added)); *see also Realco Servs., Inc. v. Halperin*, 355 A.2d 743, 743 n.* (Me. 1976) (stating that the substitution of a successor government official "is automatic").

[¶24]  Therefore, pursuant to Rule 25, we substitute the York County Judge of Probate for Judge Nadeau as a party-defendant and revise the caption

of this case accordingly. *See Profit Recovery Grp.*, 2005 ME 58, ¶ 1 n.1, 871 A.2d 1237 ("When a public officer is sued in his or her official capacity, the official can be described simply by referring to the title rather than the person's name.").

2. Status of Class Members' Probate Court Cases

[¶25] Judge Nadeau next argues that this action is moot because none of the specific Probate Court proceedings described at the hearing, including LeGrand's case, remains pending. We review the trial court's mootness determination de novo. *Mainers for Fair Bear Hunting v. Dep't of Inland Fisheries & Wildlife*, 2016 ME 57, ¶ 5, 136 A.3d 714.

[¶26] Where a named plaintiff's case has been fully adjudicated, a class action does not become moot so long as a controversy exists between the defendant and *any* member of the certified class. *See Sosna v. Iowa*, 419 U.S. 393, 402 (1975); *see also U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397-401 (1980). The class action here is not moot because LeGrand's Probate Court case was pending at the time of class certification,[8] and even though LeGrand's case was resolved, a controversy continues to exist by virtue of the

---

[8] Because the court certified the class while LeGrand's Probate Court matter was still pending, this case is materially distinguishable from the cases cited by Judge Nadeau, in which the classes were certified only *after* the named plaintiff's own claim became moot. *See Genesis HealthCare Corp. v. Symczyk,* 569 U.S. ---, 133 S. Ct. 1523, 1529-30 (2013); *Oliver v. Sec'y of State*, 489 A.2d 520, 524 (Me. 1985).

other class members' circumstances. The court's certification order broadly framed the class of plaintiffs to include "all litigants who presently are or may in the future be harmed by alleged delays in the York County Probate Court as a result of the scheduling decisions alleged in . . . plaintiff's . . . amended complaint." Thus, any litigant in the York County Probate Court whose case has been or will be exposed to delays due to the schedule instituted by Judge Nadeau is a class member. *See Goumas v. State Tax Assessor*, 2000 ME 79, ¶ 9, 750 A.2d 563 ("The language of certification makes evident the scope of the class action."). This breadth of the class is appropriate because "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration." 14 M.R.S. § 5963 (2016).[9]

---

[9] Judge Nadeau does not challenge the order creating the class, which was based on LeGrand's motion for class certification—a motion that Judge Nadeau did not oppose. For that reason, we do not opine on or otherwise address the merits of the class certification. Instead, Judge Nadeau argues only that the court erred by denying his motion to dismiss the case after the parties presented evidence at trial that certain York County Probate Court cases had been resolved. We note, however, that once a class is created based on the court's determination "that questions common to the class predominate," there will arise the very different question of whether class members are ultimately entitled to relief based on the merits of the claims raised in the case. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) (emphasis omitted). Here, to be included in the class, a York County Probate Court litigant must merely be subject to some injury or prejudice caused by a delay in that litigant's case resulting from the scheduling practices that Judge Nadeau had imposed. In order to obtain the declaratory relief sought here, however, the injury that qualifies the litigant to be a class member must be of *constitutional* magnitude. Therefore, the trial court's ultimate denial of relief is not inconsistent with the creation of a class.

[¶27]  As the trial court found, Judge Nadeau's changes to the Probate Court schedule resulted in additional three-month delays affecting most "routine" matters such as uncontested guardianships of minors or adults, conservatorships, decedents' estates, name changes, and adoptions.  This is because, under the system imposed by Judge Nadeau, fewer days were allocated for those routine cases, and fewer of those cases were scheduled for any particular day.  As the trial court found, "class members are still experiencing a delay in the scheduling of routine matters."

[¶28]  The scope of the class as defined by the court essentially ensures that there will always be class members.  Thus, even as older cases are resolved, at least some newly filed cases will be affected by the schedule implemented by Judge Nadeau, causing injury to those litigants and thereby qualifying them for class membership.  Because there are class members with pending cases for whom "there remain sufficient practical effects flowing from the resolution of the litigation to justify the application of limited judicial resources," *Clark*, 2014 ME 33, ¶ 11, 87 A.3d 712 (quotation marks omitted), the claims asserted here are not moot. [10]

---

[10]  We are not persuaded by Judge Nadeau's alternative argument that if this action were moot, none of the exceptions to the mootness doctrine would apply.  Nothing in the record indicates that the Probate Court schedule has changed since Judge Nadeau left judicial office, but even if changes have been made, this case would remain justiciable because the claims raise repetitive issues that

16

[¶29] Having determined that this action is justiciable, we now address its merits.

B.   Constitutional Challenges to the Schedule Changes

[¶30] LeGrand alleged in her complaint that Judge Nadeau violated the class members' right to prompt resolution of court matters, *see* Me. Const. art. I, § 19, and the related right of procedural due process created in the United States and Maine Constitutions, *see* U.S. Const. amend. XIV, § 1; Me. Const. art. I, §§ 6-A, 15; and that Judge Nadeau violated the class members' substantive due process rights created in the United States and Maine Constitutions, *see* U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6-A.   On appeal, LeGrand contends that the evidence compelled the court to conclude that Judge Nadeau violated these rights held by class members, and that the court therefore

would otherwise escape review "because of their fleeting or determinate nature."  *Ten Voters of Biddeford v. City of Biddeford*, 2003 ME 59, ¶ 8, 822 A.2d 1196 (quotation marks omitted).  This exception to the doctrine that courts will not entertain moot claims applies where, as would be true here, an issue is evanescent due to a party's voluntary cessation of—and ability to resume—the challenged conduct.  *See Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012).  This class action, brought against Judge Nadeau in his official capacity, remains justiciable, *see* M.R. Civ. P. 25(d)(1), because *any* judge would be free to retain or, if the schedule has been changed, to reinstate the schedule created by Judge Nadeau.

Additionally, a court has an "interest in preventing litigants from attempting to manipulate [its] jurisdiction to insulate a favorable decision from review."  *City of Erie v. Pap's A. M.*, 529 U.S. 277, 288 (2000); *see also Bunting v. Mellen*, 541 U.S. 1019, 1020-21 (2004) (Stevens, J., concurring).  The relevance of this consideration is demonstrated by the trial court's finding that Judge Nadeau made "what appears to have been an effort to moot the claims asserted against him" by seeking to expedite LeGrand's probate case after the class action was filed; to expedite another case after those parties moved to intervene in the class action; and, in part as a response to this suit, to reduce the number of court days that fell on holidays.

abused its discretion by declining to issue a judgment declaring the schedule to be unconstitutional and enjoining its use.

[¶31]  We assess the court's factual findings for clear error.  *Gordon v. Cheskin*, 2013 ME 113, ¶ 12, 82 A.3d 1221.  Because LeGrand had the burden of proof at trial, she "must demonstrate on appeal that a contrary finding is compelled by the evidence."  *Guardianship of Ard*, 2017 ME 12, ¶ 14, 154 A.3d 609 (quotation marks omitted).  We review the court's ultimate determination not to issue a declaratory judgment or provide injunctive relief for an abuse of discretion.  *See Bangor Historic Track, Inc. v. Dep't of Agric., Food & Rural Res.*, 2003 ME 140, ¶ 11, 837 A.2d 129; *Capodilupo v. Town of Bristol*, 1999 ME 96, ¶ 3, 730 A.2d 1257.  We review conclusions of law, including issues of constitutional interpretation, de novo.  *Bouchard v. Dep't of Pub. Safety*, 2015 ME 50, ¶ 8, 115 A.3d 92; *Windham Land Tr. v. Jeffords*, 2009 ME 29, ¶ 42, 967 A.2d 690.

1.     Rights of Open Courts and Meaningful Access to Courts

[¶32]  LeGrand argues that the effect of Judge Nadeau's altered court schedule resulted in unreasonable delays for litigants to a degree that violated the open courts provision of the Maine Constitution and the class members' due process right of access to the courts.

[¶33]  The open courts provision requires that "[e]very person, for an injury inflicted . . . shall have remedy by due course of law; and right and justice shall be administered . . . promptly and without delay."  Me. Const. art. I, § 19.  When a challenge is based on delays in judicial proceedings, we have not held that delays are unconstitutional per se.  Rather, the constitutional provision protects only against delays that are so unreasonable as to constitute a de facto denial of meaningful access to the courts.  *See Musk v. Nelson*, 647 A.2d 1198, 1202 (Me. 1994); *Me. Med. Ctr. v. Cote*, 577 A.2d 1173, 1176 (Me. 1990) (stating that a statute of limitations does not violate Me. Const. art. I, § 19 unless it is "so unreasonable as to deny meaningful access to the judicial process").

[¶34]  Separate from the open courts protection created in the Maine Constitution, both the Maine and United States Constitutions establish a right of meaningful access to the courts.  *Nader v. Me. Democratic Party*, 2012 ME 57, ¶ 23, 41 A.3d 551; *see also* Me. Const. art. I, §§ 6-A, 15; *L.A. Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 705-706 (9th Cir. 1992).  In interpreting the scope of the federal right of access,[11] courts have concluded—similar to our conclusions

---

[11]  Although "the basis of the right of access to courts is not fully settled," the United States Supreme Court has grounded it in the Fifth Amendment and Fourteenth Amendment Due Process Clauses, the Fourteenth Amendment Equal Protection Clause, the Article IV Privileges and Immunities Clause, and the First Amendment.  *See Nader v. Me. Democratic Party*, 2012 ME 57, ¶ 25

regarding the nature of the right to open courts established in the Maine Constitution—that "delay per se is not unconstitutional." *Eu*, 979 F.2d at 707 (quotation marks omitted); *Ad Hoc Comm. on Judicial Admin. v. Massachusetts*, 488 F.2d 1241, 1244 (1st Cir. 1973). Although it is possible "that litigation delays in certain circumstances could effectively deprive individual litigants of the ability to vindicate fundamental rights," *Eu*, 979 F.2d at 707, this analysis is conducted on a case-by-case basis, *see Keller v. United States*, 38 F.3d 16, 21 (1st Cir. 1994).

[¶35] With support in the record, the court found that of the York County Probate Court proceedings described by the evidence, LeGrand's was the only one that generated constitutional concerns. LeGrand alleged in a guardianship petition that her daughter was unable to safely parent a child, which is a circumstance that imposes on a court the responsibility to act promptly. Because LeGrand's Probate Court case was resolved and the court's schedule of other contested cases was current, the court did not err by concluding that it could not provide prospective relief to LeGrand or to litigants in contested Probate Court cases.

---

n.10, 41 A.3d 551 (citing *Christopher v. Harbury*, 536 U.S. 403, 413-14, 415 n.12 (2002)). On appeal, the class members frame the meaningful access claim as an aspect of procedural due process.

[¶36] As for routine York County probate cases, although the schedule changes resulted in delays for those parties, the court did not err in determining that those delays did not deny litigants their constitutional right to open courts or meaningful access to the courts. Before Judge Nadeau altered his court schedule, an uncontested York County Probate Court adoption proceeding took about three months. With the schedule change, adoptions and other routine matters became subject to an additional three-month delay, meaning it could take six months for such a case to be fully resolved. The delay, caused by Judge Nadeau's decision to give priority to contested cases over uncontested routine matters, is not of a magnitude that violates the constitutional rights of litigants in uncontested cases. We do not minimize the importance to litigants and the general public of timely resolution of cases, particularly in cases that involve the interests of children. The Superior Court did not err, however, in determining that the length of the delays in these routine cases does not rise to the level of constitutional deprivations, because those delays did not amount to a de facto denial of access to the courts altogether. *See Eu*, 979 F.2d at 707.

2.      Substantive Due Process

[¶37]  Although acknowledging the absence of authority to support her next contention, LeGrand argues that Judge Nadeau violated the class members' substantive due process rights as litigants in the York County Probate Court.

[¶38]  The Supreme Court has held generally that "the touchstone of [substantive] due process is protection of the individual against arbitrary action of government."  *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (quotation marks omitted).  A person's right to substantive due process is violated when the government engages in "conduct that shocks the conscience and violates the decencies of civilized conduct."  *Id.* at 846 (quotation marks omitted).  In the context of executive action, "'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'"  *Norton v. Hall*, 2003 ME 118, ¶ 19, 834 A.2d 928 (quoting *County of Sacramento*, 523 U.S. at 846).  "[C]onduct intended to injure in some way unjustifiable by any government interest" would likely support a substantive due process claim.  *County of Sacramento*, 523 U.S. at 849; *see also Daniels v. Williams*, 474 U.S. 327, 331 (1986).

[¶39]  As the trial court found, the schedule changes implemented by Judge Nadeau were "[i]n large part . . . intended to get back at the County Commissioners who had rejected Judge Nadeau's request for an increase in salary and court time."  Given Judge Nadeau's conduct and underlying motivation, the court did not rule out the possibility that his "actions met the high standard of outrageousness necessary for a substantive due process violation."  Nonetheless, the court declined to decide whether Judge Nadeau's conduct rose to the level of violating litigants' substantive due process rights, reasoning that even if it could make such a determination, any resulting declaratory and injunctive relief would serve no useful purpose.  In the circumstances of this case, the court's exercise of restraint was not an abuse of discretion, *see Capodilupo*, 1999 ME 96, ¶ 3, 730 A.2d 1257, making it unnecessary for the court—or us—to break new ground and determine if Judge Nadeau's scheduling decisions violated the class members' right of substantive due process.

[¶40]  The Declaratory Judgment Act expressly provides that a court "may refuse to render or enter a declaratory judgment . . . where such judgment . . . would not terminate the uncertainty or controversy giving rise to the proceeding."  14 M.R.S. § 5958 (2016).  Further, a court should elect to

enter such a declaration "only when some useful purpose will be served." *Capodilupo*, 1999 ME 96, ¶ 3, 730 A.2d 1257 (quotation marks omitted).

[¶41] Here, the trial court engaged in a thoughtful exposition of the reasons not to issue a declaratory judgment. The court explained that the most significant effects of the schedule change were no longer harming litigants in contested cases, and that delays were now limited to routine matters; that Judge Nadeau had recently made further modifications in the schedule to reduce delays (although he was motivated by this suit to make those changes); and that the schedule changes did have a positive effect, reducing the backlog of contested cases.

[¶42] Additionally, the court articulated the practical difficulties that would result if it—as an outside authority—were to impose a specific scheduling regimen and then regulate the day-to-day administrative decisions affecting the operations of a court. As the court correctly observed,

> A court needs to be able to adjust its schedule in light of the demands placed upon it and the resources available. Absent very compelling reasons, another court should not attempt to back-seat drive that process. In this case, particularly where the major effects of the challenged schedule changes are all in the past, there is no reason to depart from this principle.

[¶43] The difficulties posed by micromanaging a court's scheduling policies are evident in LeGrand's proposed judgment, which would require

24

imposition of a specific court schedule subject to ongoing, receivership-style supervision and retained Superior Court jurisdiction. Such proposed relief ignores the reality that judges and other court officials who are responsible for case and docket management need flexibility to respond deftly and often on short notice to changes in the types and numbers of pending cases. The court did not abuse its discretion by ultimately determining that, because the most significant problems created by the schedule changes had dissipated and the remaining effects of those changes were limited, declaratory and injunctive relief would not serve a useful purpose in this case. Accordingly, the court did not err in declining to reach the underlying question of whether LeGrand had established violations of substantive due process.

The entry is:

> Defendant Nadeau's motion to dismiss is denied. Judgment affirmed.

---

Robert E. Mittel, Esq. (orally), MittelAsen, LLC, Portland, and Temma Donahue, Esq., Rioux, Donahue, Chmelecki & Peltier LLC, Portland, for appellants Renee LeGrand and other class members

Peter J. Brann, Esq. (orally), and Michael E. Carey, Esq., Brann & Isaacson, Lewiston, for appellee York County Judge of Probate

York County Superior Court docket number CV-2015-269
FOR CLERK REFERENCE ONLY