MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2019 ME 110
Docket:        Pen-19-13
Submitted
  On Briefs:  May 30, 2019
Decided:      July 11, 2019

Panel:         SAUFLEY, C.J., and ALEXANDER, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.


IN RE CHILD OF LACY H.


PER CURIAM

[¶1]  Lacy H. appeals from a judgment of the District Court (Bangor, *Jordan, J.*) terminating her parental rights to her child.[1]  She argues that the intervention of the Governor's office in the decision of the Department of Health and Human Services to cancel or delay her trial placement violated her due process and equal protection rights, and that the court erred and abused its discretion in determining that she was unfit and that the termination of her parental rights was in the child's best interest.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  The Department filed a child protection petition and a petition for an order of preliminary protection in February 2017, soon after the child was

---

[1]  The child's father has not been identified; one man was ruled out as the father through DNA testing, and the mother testified that she had been raped by an unknown assailant soon before she became involved with that man.  She also told others that the father was frightening and was a member of a drug cartel.

born. *See* 22 M.R.S. §§ 4032, 4034 (2018). The petition alleged that the child had been born prematurely and had been exposed to marijuana during his mother's pregnancy, and that the mother was resisting the directions of hospital staff and not safely caring for the fragile newborn. The court (*Larson, J.*) entered an order of preliminary protection and placed the child in the custody of the Department of Health and Human Services.

[¶3] In May 2017, the court (*Jordan, J.*) held a jeopardy hearing that the mother did not attend. *See* 22 M.R.S. § 4035(1) (2018). The court entered a jeopardy order based on neglect or threat of neglect to the child due to the mother's substance abuse, active criminal history, untreated mental health issues, and lack of stable housing or supports. *See* 22 M.R.S. § 4035 (2018). The order established a permanency plan of reunification with the mother and called for the mother to participate in counseling, drug screens, supervised visits, and other services.

[¶4] After an initial judicial review and permanency planning hearing held in October 2017, the court ordered the mother to participate in a diagnostic evaluation in November 2017. The court held another judicial review and permanency planning hearing the following month, ordering no change in custody.

[¶5] The Department petitioned for termination of the mother's parental rights in January 2018. The Department alleged that, after ten months, the mother had relapsed in her substance abuse; she had failed to attend and participate consistently in counseling, case management, anger management, and drug screens; and she remained under threat of extradition because of a lifetime warrant for her arrest in Georgia.

[¶6] In May 2018, while the petition was pending, the Department was considering an additional effort toward rehabilitation and reunification—a possible trial placement of the child with the mother. When the mother arrived for the family team meeting for the team to make final arrangements for a trial placement, she learned that the Governor's office had become involved in her case and that the trial placement would not be happening at that time. This result was consistent with the caseworker's position that the trial placement should not happen for safety reasons, though it conflicted with his supervisor's opinion that a trial placement could be attempted. No trial placement was attempted after that family team meeting.

[¶7] The court held a trial on the termination petition over the course of three days in November 2018. It then entered a judgment granting the petition to terminate the mother's parental rights after reaching findings of fact by clear

and convincing evidence. 22 M.R.S. § 4055(1)(A)(1)(a), (B)(2)(a), (b)(i) (2018). The court reached the following findings, which are supported by competent evidence in the record. *See In re A.M.*, 2012 ME 118, ¶ 29, 55 A.3d 463.

> The child was born premature. He was born drug affected due to the mother's consistent use of marijuana throughout her pregnancy. . . . The mother did very poorly as far as engaging in services and addressing the jeopardy issues for a substantial portion of the history of this case.
>
> [A doctor] conducted a Court ordered diagnostic evaluation for the mother. He concluded, and the Court hereby finds, that the mother's diagnosis is an Antisocial Personality Disorder. This diagnosis is very difficult to treat due to the person's irresponsibility, the tendency to fabricate, and difficulties being honest with a clinician. The prognosis for change with such a diagnosis is poor. The Court finds his report persuasive. The Court also finds that the mother has done very well, in structured supervised settings, in parenting her child (with a couple of exceptions). The mother can learn new cues from the child in that framework. However, left to her own devices when she would be on her own, she is likely to exhibit bad judgment in terms of the people she allows to care for her son, bad judgment in terms of the people with whom she establishes relationships in terms of their impact on her son, and her likelihood of having unstable living arrangements. The Court concludes that she is also likely to place her own needs and desires ahead of those of her child.
>
> The Court finds that the testimony of other witnesses is consistent with [the evaluating doctor]'s analysis. The mother told [the doctor] in one of her sessions, in either December 2017 or January 2018, that she had not used drugs for forty-one (41) months. . . . . The Court notes that on December 11, 2017, she admitted to other witnesses that she had relapsed and used Xanax and Oxycontin.

Numerous incidents were related by unbiased professionals and others concerning remarks and conduct by the mother, which she then subsequently denied. Her account of being clean for forty-one months does not line up with any of the rest of the history she related regarding her life in Georgia, traveling the country and living on the streets, and eventually becoming pregnant and moving to Maine. However, she also told her therapist . . . that she had relapsed in December of 2017. She told him that she had been clean and sober for more than three years prior to that relapse. The Court finds that her accounts are not credible regarding her maintenance of sobriety.

The Court finds that after getting off to a slow start the mother has made a good faith effort to correct the underlying problems. The Court finds, however, that her late start has resulted in an inability for the Court to conclude at this time that jeopardy has been alleviated. The Court finds that her judgment regarding unsafe people is impaired and her ability to care for her child on her own is also unsafe. The Court finds by clear and convincing evidence that she is unable to rectify the problems that brought this case before the Court in a time reasonably calculated to meet the needs of the child. The Court additionally finds that the best interests of the child would be to terminate the parental rights of the mother and free him up for adoption. The above findings are all by clear and convincing evidence.

The mother timely appealed. *See* 22 M.R.S. § 4006 (2018); M.R. App. P. 2A, 2B(c)(1).

## II. DISCUSSION

[¶8] The mother argues that (A) the court erred in terminating her parental rights because her rights of due process and equal protection of the law were violated when the Governor's office interceded to prevent or delay

6

the trial placement of the child with her in May 2018, and (B) the court erred and abused its discretion in finding parental unfitness and determining that termination of the mother's parental rights was in the child's best interest.

A.     Due Process and Equal Protection

[¶9]   The mother argues that the interruption of the plan for a trial placement deprived her of a fundamentally fair process and was discriminatory as demonstrated by Governor Paul LePage's public statements concerning people with gang-related histories entering Maine from other states.  At the termination hearing, the mother argued to the trial court that a trial placement should have happened in May 2018, but she did not argue that entering a judgment terminating her parental rights after that placement decision would violate her rights of due process or equal protection.  Because the constitutional issue has been raised for the first time on appeal, we review the due process and equal protection issues for obvious error.  *See In re Child of Kaysean M.*, 2018 ME 156, ¶ 8, 197 A.3d 525.  Obvious error is error that is "seriously prejudicial error tending to produce a manifest injustice."  *Id.* (quotation marks omitted).

[¶10]  The Governor is the head of the Executive Branch of government in Maine.  *See* Me. Const. art. V, pt. 1, § 1 ("The supreme executive power of this

State shall be vested in a Governor."). "The Department of Health and Human Services is established as a cabinet-level department." 22-A M.R.S. § 201(1) (2018). The Department "is under the control and supervision of the Commissioner of Health and Human Services, who reports directly to the Governor." 22-A M.R.S. § 204 (2018). The Department has the obligation to fulfill "[c]hild and family services responsibilities, including but not limited to child welfare, children's behavioral health and early childhood services." 22-A M.R.S. § 201(2-A)(C)(2) (2018).

[¶11] The involvement of the Governor or the Commissioner in a child protection matter does not, therefore, violate Maine statutory law or the Maine Constitution. Thus, the question is not whether the Governor, Commissioner, or other Executive Branch actors in the Department have been involved in a case; the question is whether the particular actions taken interfered with the due process or equal protection rights of a parent.

[¶12] In the matter before us, there is no evidence of precisely what actions or suggestions the Governor made to the Department concerning the trial placement. Although the anticipated trial placement did not occur as scheduled, the decision not to implement a trial placement in May 2018 was communicated in the context of a family team meeting that, by design, provided

an opportunity to adjust the trajectory of rehabilitation and reunification efforts. Throughout the proceedings, the mother was represented by counsel. *See* 22 M.R.S. § 4005(2) (2018). The mother did not seek a judicial review, and the matter proceeded to trial on the termination petition in November 2018.

[¶13] At the termination hearing, the court was presented with evidence that the caseworker believed that a trial placement would not have been safe for the child as of May 2018, that visits in less restrictive environments had proved detrimental to the child, and that the diagnostic evaluation, which had been completed before the trial placement was scheduled to begin, underscored the safety concerns of the caseworker. The record discloses that there was a disagreement within the Department about whether to attempt a trial placement, and a decision was made by the Department, with undefined input from the Governor, not to attempt the trial placement in May 2018.

[¶14] The evidence of a disagreement among the Executive Branch decisionmakers did not require the court to conclude that the Governor or any other Executive Branch actor either (1) acted arbitrarily[2] or in a way that

---

[2] Substantive due process provides "protection of the individual against arbitrary action of government." *LeGrand v. York Cty. Judge of Prob.*, 2017 ME 167, ¶ 38, 168 A.3d 783 (quotation marks omitted). The right to substantive due process is violated, however, only "when the government engages in conduct that shocks the conscience and violates the decencies of civilized conduct." *Id.* (quotation marks omitted). "In the context of executive action, only the most egregious official conduct can be said to be arbitrary in the constitutional sense"; for instance, conduct that is "intended

deprived the mother of fundamental fairness,[3] *see* U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6-A; *In re Children of Bethmarie R.*, 2018 ME 96, ¶ 23, 189 A.3d 252; *LeGrand v. York Cty. Judge of Prob.*, 2017 ME 167, ¶ 38, 168 A.3d 783; *In re Kristy Y.*, 2000 ME 98, ¶ 6, 752 A.2d 166, or (2) failed to treat similarly situated persons alike in violation of the mother's right to equal protection of the laws, *see* U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6-A; *Adoption of Riahleigh M.*, 2019 ME 24, ¶ 28, 202 A.3d 1174.  No public statements from the Governor were presented to the trial court, and the mother has failed to demonstrate any constitutional violation.

[¶15]  Based on the evidence presented at the termination hearing, held six months after the decision on the trial placement, the court found that the mother, although having some success while in a supportive, supervised environment, was not likely to be able to provide safe care for her child on her

---

to injure in some way unjustifiable by any government interest would likely support a substantive due process claim." *Id.* (quotation marks omitted).

[3]  Procedural due process "requires fundamental fairness, which involves consideration of three factors to assess whether the State has violated an individual's right to due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and administrative burdens that the additional or substitute procedural requirement would entail."

*In re Kristy Y.*, 2000 ME 98, ¶ 6, 752 A.2d 166 (quoting *Balian v. Bd. of Licensure in Medicine*, 1999 ME 8, ¶ 10, 722 A.2d 364).

own. The court found that she was not—even with the additional services afforded up to the time of trial—able to protect the child from the jeopardy identified by the court a year and a half earlier. On these facts, the court did not commit obvious error—or any error of fact or law, whether constitutional or statutory in dimension—when it entered its judgment seven months after the Department's decision on the trial placement.

B.      Finding of Unfitness and Determination of Best Interest

[¶16] Based on the court's findings of fact, which are supported by the evidentiary record, the court did not err in its ultimate finding that, despite her recent efforts, the mother remains unable to protect the child from jeopardy and those circumstances are unlikely to change within a time that is reasonably calculated to meet the child's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i); *In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195. The court was not bound to believe the mother's testimony in whole or in part, and it explicitly found her not to be credible, especially regarding her drug use. *See In re Children of Christine A.*, 2019 ME 57, ¶ 9, 207 A.3d 186. Nor did the court err or abuse its discretion in determining that the termination of the mother's parental rights was in the best interest of the child, who had by then spent nearly two years in

foster care.  *See* 22 M.R.S. § 4055(1)(B)(2)(a); *In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297.

The entry is:

Judgment affirmed.

---

Ezra A.R. Willey, Esq., Willey Law Offices, Bangor, for appellant mother

Aaron M. Frey, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Bangor District Court docket number PC-2017-20
FOR CLERK REFERENCE ONLY