2009 ME 131

**In re DAVID H.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 23, 2009.

Decided: Dec. 29, 2009.

Joseph M. Baldacci, Esq.; Eric M. Mehnert, Esq., Hawkes & Mehnert, Bangor, ME, for the father and the cousin couple.

William P. Logan, Esq., Irwin, Tardy & Morris, Portland, ME, for the unrelated couple.

Bruce C. Gerrity, Esq., Stephen D. Wilson, Esq., Preti, Flaherty, Beliveau & Pachios, LLP, Portland, ME, for the mother.

Janet T. Mills, Attorney General, Nora Sosnoff, Asst. Atty. Gen., Augusta, ME, for the Maine Department of Health and Human Services.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and JABAR, JJ.

PER CURIAM.

[¶ 1]   Last year, this matter was before us on appeal from a judgment entered in the District Court (Belfast, *Nivison, J.*) terminating the mother's and father's parental rights to the child, David H. Following the appeal by both the mother and the

father,[1] we affirmed the termination of parental rights judgment, *see In re David H.*, Mem–08–127 (July 8, 2008), ending an extensively litigated three-year process that had commenced when the Department of Health and Human Services (the Department) filed a petition for a child protection order in October 2005.

[¶ 2] Approximately four months after we affirmed the termination judgment, the mother and father filed a joint motion in the District Court seeking to reopen or collaterally attack the termination judgment. At about the same time, the first cousin of the father and the cousin's spouse (the cousin couple), and a couple not related to the parties (the unrelated couple) who allege they wish to adopt the child, filed a series of motions seeking to: (1) gain intervener or interested-person status in the child protection proceeding; (2) secure a kinship placement of the child; (3) stay or delay proceedings for judicial review and permanency placement of the child; and (4) enjoin or prevent completion of an on-going adoption proceeding.

[¶ 3] After a hearing that was followed by extensive evidentiary submissions by the parties, the court (*Field, J.*), by a careful and well-reasoned opinion, denied or dismissed all of the pending motions. The court also dismissed the child protection proceeding upon representation by the Department that adoption of the child had been completed.

[¶ 4] The mother and father, the cousin couple, and the unrelated couple all appeal from the District Court's judgment and certain orders. They assert a variety of issues on appeal, most related to claims

that new evidence or new legal arguments have been discovered since the close of the record in the termination proceeding that should have caused the trial court to reopen the termination proceeding. Because the record demonstrates conclusively that all of the facts or issues argued by the appellants were known and could, with due diligence, have been presented in the termination proceeding, and because the appellants' other claims asserting that the trial court's actions were an error of law or an abuse of discretion are without merit, we affirm the judgment and orders of the District Court.

## I. CASE HISTORY

[¶ 5] Review of the record indicates the following facts relevant to the issues on this appeal. The marriage of the mother and the father was severely afflicted by domestic violence perpetrated by the father against the mother. The child, now ten years old, was adopted into this marriage as a young child.

[¶ 6] The child regularly witnessed domestic violence. The father admitted that he physically abused the mother in front of the child. Among the incidents the child reported was one when a physical assault left his mother bloodied and another when his father put his mother into a dumpster. The child was also a direct victim of physical violence. In one instance, his father struck him. In another instance, his father put the child in a cold shower with his clothes on after the child had wet his pants.

---

1. The record indicates that the mother and father were divorced at some point in 2007. However, they were represented by the same counsel on appeal from the termination of parental rights judgment. In these post-judgment proceedings, the mother and father have sometimes acted through the same counsel and sometimes through separate counsel in their coordinated efforts to attack the termination of parental rights judgment. It appears that the mother and father may have remarried at some point.

## A. The Child Protection Proceeding

[¶ 7] The Department filed a petition for a child protection order on October 3, 2005, alleging that the child was in jeopardy due to the father's abusive behavior and the mother's failure to protect the child from abuse. Initially the Department allowed the child to remain in his mother's custody, with a requirement that the father be out of the home and have no contact with the child.

[¶ 8] The court (*Nivison, C.J.*) held a jeopardy hearing on January 24, 2006. With agreement of the mother and the father, the court entered a jeopardy order finding jeopardy as to the mother and father. The order states, "At the outset, the parties represented to this [c]ourt that they were in agreement as to findings and disposition in this matter." The court found that the child had witnessed domestic violence between the mother and father, constituting emotional abuse to the child; that the mother had been unable to protect the child from jeopardy; and that she was unlikely to be able to protect him from jeopardy posed by the father without continued mental health treatment and other supports. The child remained in the mother's custody, with the father to have no unsupervised contact with the child.

[¶ 9] The mother, while acknowledging the need for mental health treatment, made no suggestion that she was incompetent to participate in the proceeding or incompetent to care for her child. Further, the record at this point, viewed objectively, does not suggest any issue regarding the mother's competence to participate in the proceedings. For the trial court, the case would have appeared similar to other child protective matters involving a mother who was a victim of domestic violence who was experiencing difficulty in separating herself from the domestic violence perpetrator and in protecting her child from observing and being victimized by domestic violence.

[¶ 10] The record suggests that in early 2006, there were outstanding orders prohibiting the father from having contact with the child or contact with the mother in: (1) the pending child protective proceeding; (2) a protection from abuse proceeding; and (3) a bail order in a criminal proceeding. Despite these orders, the mother continued to contact and allow the child to have unsupervised contact with the father. In one instance, the mother took the child to Great Neck, New York, met the father, and enrolled the child in school in New York for the apparent purpose of removing him from Maine jurisdiction.

[¶ 11] Following these incidents, the Department requested and was granted an order for preliminary child protection, removing the child from his mother's custody. The mother, in the presence of her attorney, consented to this order and waived a summary preliminary hearing. A review hearing was held in April 2006. The father was incarcerated in New York State at that time, but he was represented by counsel at the review hearing. The court (*Anderson, J.*) reaffirmed the Department's custody of the child in a detailed order. However, even with this history, the Department continued its efforts to maintain the mother-child relationship. To this end, the Department began a trial placement of the child with the mother in August 2006.

[¶ 12] Another review hearing was held on October 12, 2006. After that hearing, the court (*Nivison, C.J.*) entered a judicial review order directing the parties to establish therapeutic *supervised* contact between the father and the child. However, the mother continued her past practice of allowing *unsupervised* contact with the father in violation of court orders. This pattern continued despite several more

court hearings and permanency plans entered by the court.

[¶ 13] Finally, because the mother continued to allow the father to have ongoing unsupervised contact with the child, the Department requested another order allowing it to take custody of the child. The court (*Anderson, J.*) entered an order for preliminary child protection allowing the Department to take custody of the child. After a preliminary hearing in January 2007, the court found that the child was in immediate risk of serious harm and ordered that the child was to remain in Department custody. Neither parent contested jeopardy or the Department's continued custody of the child.

B. The Termination Proceeding

[¶ 14] The Department filed a petition to terminate the mother's and father's parental rights in February 2007. Continuing the pattern of affording the parents a full and fair hearing on all issues, the court (*Nivison, C.J.*) held a five-day hearing on the termination of parental rights petition on August 22, 23, 27, and 30, and September 5, 2007. At the hearing, the mother and father were represented by separate counsel.

[¶ 15] During the hearing, held almost two years after the court's first involvement in the family, the record indicates that neither the mother nor the father made any suggestion that any relative might provide a kinship placement for the child, nor did they suggest that the child might have any inheritance rights that could be compromised by termination of parental rights. The record also indicates that, at the hearing, the mother principally urged that she was competent to care for

the child; that she was able to provide parenting, care, and protection for the child within a time reasonably calculated to meet the child's needs for permanency; and that, because she was available to provide competent care, termination of parental rights would not be in the child's best interests.

[¶ 16] Review of the termination hearing record, including the mother's testimony, discloses no event or statement that might have suggested to the court that the mother could not answer questions appropriately, did not understand the nature and consequences of the proceeding, or was otherwise incompetent to assist counsel and participate in the proceedings. At the hearing, the mother, assisted by counsel, emphasized her competence, not her incompetence.

[¶ 17] On October 15, 2007, the court entered an eleven-page judgment terminating the mother's and father's parental rights. The mother filed a motion for further and amended findings of fact and conclusions of law, which the court granted in part and denied in part.

[¶ 18] The father and mother filed separate notices of appeal, but subsequently filed a joint brief, appealing from the judgment terminating their parental rights. We affirmed the judgment in a memorandum of decision dated July 8, 2008, Mem–08–127, and denied the mother's and father's subsequent joint motion for reconsideration.

[¶ 19] After we affirmed the judgment terminating parental rights, the child lived in a pre-adoptive foster home. The State has represented that the child was adopted on January 30, 2009, by his pre-adoptive foster family.[2]

**2.** The record contains no documentation from a court regarding any adoption. If an adoption has become final, this appeal may be moot. These post-judgment motions may also be subject to dismissal for failure to join the adoptive parents as a necessary party. *See*

## C. The Post–Judgment Motions

[¶ 20] On November 10, 2008, the cousin couple moved to intervene in the case, for interested-person status, and for a kinship placement of the child with them. *See* 22 M.R.S. § 4062(4) (2008).[3] On November 26, 2008, they filed a motion for relief from judgment. On December 1, 2008, the cousin couple, with support of the mother and father and the mother's affidavit, filed a verified motion for a temporary restraining order to stay all matters relating to the child's permanency placement and adoption pending a hearing and disposition of their other motions.

[¶ 21] On December 2, 2008, the mother and father filed a joint motion for relief from judgment pursuant to M.R. Civ. P. 60(b). In a refrain that the trial court could have recognized as common in domestic violence cases, the father and moth-

er asserted that the mother's testimony at the termination hearing that he had abused her was fabricated as a result of her mental illness and that she had since recanted that testimony.[4] The father ignored his earlier admission that he had physically abused the mother in front of the child. The mother asserted that she had suffered from mental illness that rendered her incompetent to waive a summary preliminary hearing in March 2006 and to testify at the termination hearing, and, in a separate argument, that the failure to assign her a guardian given her mental condition was obvious error and violated her due process rights.

[¶ 22] On December 9, 2008, the unrelated couple filed a motion to intervene and for interested-person status. On the record, it appears that this couple attempted to become involved only upon being

MR. Civ. P. 19. However, we address here and resolve the merits of the issues raised on this appeal to avoid concern about finality or collateral consequences, such as inheritance impacts, and to save the State, the guardian ad litem, and any adoptive parents the time, uncertainty, and expense of further litigation by the appellants, who appear willing and able to litigate extensively claims of questionable merit.

3. The kinship placement statute, 22 M.R.S. § 4062(4) (2008), states:

4. **Kinship preference.** In the residential placement of a child, the department shall consider giving preference to an adult relative over a nonrelated caregiver when determining placement for a child, as long as the related caregiver meets all relevant state child protection standards.

Here, because the parents and the cousin couple never suggested any kinship placement before or during the termination proceeding, neither the Department nor the court had any opportunity to decide if the related caregiver meets all state child protection standards.

4. Courts regularly see domestic violence cases in which the victim reports an incident of domestic violence at the time or shortly after

it occurs, and physical observation of the victim sometimes confirms the allegation of violence, but later the victim recants, claims loss of memory, or becomes unavailable to testify, requiring the State to rely on secondary evidence such as reports of persons who have heard the victim's contemporaneous report of the violence or have observed the victim's injuries to prove a case. *See, e.g., State v. Ahmed,* 2006 ME 133, ¶¶ 8–11, 909 A.2d 1011, 1015–16 (victim recants, blames self, claims loss of memory); *State v. Barnies,* 680 A.2d 449, 450 n. 1 (Me.1996) (victim unavailable); *State v. Whitten,* 667 A.2d 849, 850–51 (Me.1995) (victim claims loss of memory); *see also, e.g., People v. Brown,* 33 Cal.4th 892, 16 Cal.Rptr.3d 447, 94 P.3d 574 (2004); *State v. Cagley,* 638 N.W.2d 678, 679–81 (Iowa 2001); *State v. Rioux,* 708 A.2d 895 (R.I.1998); *State v. MacArthur,* 138 N.H. 597, 644 A.2d 68, 68–69 (1994). *See also* Katherine G. Breitenbach, Note, *Battling the Threat: The Successful Prosecution of Domestic Violence After Davis v. Washington,* 71 Alb. L.Rev. 1255, 1255–58 (2008) (generally discussing issues that cause domestic violence victims to recant or otherwise seek to avoid testifying against the perpetrator and thus require that prosecutions of the perpetrator rely on secondary evidence).

contacted by the parents after we affirmed the judgment terminating parental rights. This couple had not been presented by the parents as a potential placement for the child during the three years that the child protective proceeding was pending. The unrelated couple asserted that they had filed a petition to adopt the child in Waldo County Probate Court, apparently while the foster parents' adoption petition was pending.

[¶ 23] On February 4, 2009, the Department filed a motion to dismiss the child protection proceedings based on the child's having been adopted on January 30, 2009. On the same day, the court (*Field, J.*) held a hearing concerning the pending motions at which the GAL, the State, and counsel for the father, mother, the cousin couple, and the unrelated couple were present. Given the extraordinary relief requested by the appellants, the court ordered the appellants to file "affidavits that . . . can be described as the best offer of proof that you would have" if the case were to go to trial.

[¶ 24] The parties then filed affidavits as offers of proof, outlining their positions in greater detail. The father filed a supplemental memo in support of his Rule 60(b) motion, arguing that the mother's testimony against him at the termination hearing was fabricated as a result of her mental incapacity, she has since recanted, and the father should be relieved from the termination judgment pursuant to Rule 60(b)(3) and (6).

[¶ 25] The mother filed a supplemental motion, referencing Rule 60(b)(1), (2), (3), (4), (5), and (6), along with supporting affidavits from an attorney and a psychiatrist. Supported by the attorney's affidavit, the mother asserted for the first time that the termination judgment and purported adoption was not in the child's best interest by potentially precluding him from inheriting hundreds of thousands of dollars as the mother's "issue" under her family's trusts in New York. The mother also detailed her history of in-patient and out-patient treatment for mental health and physical conditions between 2002 and 2009, and argued that the Department failed to consider a kinship placement for the child. The psychiatrist's affidavit opined that the mother, who had been a physician, was unable to help herself or appreciate complex matters like legal proceedings between 2005 and 2008.

D.  The Court Order on the Post–Judgment Motions

[¶ 26] On May 1, 2009, the court (*Field, J.*) issued a twenty-one-page corrected order, stating that, after "carefully reviewing all of the submissions in detail, the [c]ourt conclud[ed] that further hearing [was] not necessary because, even assuming that the moving parties can prove all of the factual allegations contained in their affidavits, relief would not be warranted." The court denied the cousin couple's motion to intervene and for interested-person status, their motion for relief from judgment, and their other pending motions; denied the unrelated couple's motions to intervene and for interested-person status; denied the mother's and father's joint motion for relief from judgment and the mother's supplemental motion for relief from judgment; and, finding no valid basis for granting the parents' motions for relief from judgment, granted the Department's motion to dismiss the child protective proceeding. The court denied all other outstanding motions not expressly addressed.

[¶ 27] As to the father, the court concluded that his motion for relief from judgment was supported by neither M.R. Civ. P. 60(b)(3) nor (6). The court stated that, even if the mother had convincingly retracted all of her prior testimony that the

father had physically abused her both when the child was present and not present, the father had stipulated to findings at the jeopardy hearing stage that the child had witnessed domestic violence and physical altercations between the parents, which supported the court's determination at the termination hearing that the father was unwilling or unable to protect the child from jeopardy. Additionally, the court concluded that: the father failed, in his motion for relief from judgment, to successfully challenge findings from the termination hearing that he failed to protect the child from jeopardy by showing repeated disregard for the child's emotional health; reopening the termination proceedings would not be in the child's best interests; and the father could have raised the issues he raised in his motion at the termination hearing. Accordingly, the court concluded that the father had failed to meet his burden to show any basis for relieving him from the termination judgment pursuant to Rule 60(b)(3) or (6).

[¶ 28] As to the mother, the court concluded that, despite her record of mental illness, there was insufficient evidence to show that she was mentally incompetent during the termination proceedings or incapable of assisting counsel. The motion court noted that the termination court was aware of the mother's mental health history at the time of the termination proceedings, and the mother was represented by counsel, indicating that the mother could have argued incompetency in that earlier proceeding, but did not. The court noted

that it was not required to accept the mother's psychiatrist's opinion of her competency. *See In re Fleming,* 431 A.2d 616, 618 (Me.1981).

[¶ 29] The court concluded that the mother failed to show, despite her challenge to her waiver of a jeopardy hearing three years prior, any support for a grant of her Rule 60(b)(6) motion. Additionally, the court concluded that relief from judgment pursuant to Rule 60(b)(3) or (4) was not warranted on the grounds that the Department allegedly failed to pursue possible kinship placements for the child.

[¶ 30] Finally, after reviewing the matter of the family trusts in light of the child's best interests, the court concluded that relief was not warranted pursuant to Rule 60(b)(2) and (6) based on the mother's allegation of the child's lost inheritance because (1) the mother failed to show that evidence of the family trust was "newly discovered evidence," and (2) there was uncertainty that the child might inherit the trust proceeds in any event or that the child would be automatically prohibited from inheriting under those trusts, despite his adoption, following termination of the mother's parental rights, *see* 22 M.R.S. § 4056(4) (2008).[5]

[¶ 31] After the court's May 1 ruling, the appellants filed a variety of motions seeking reconsideration of various issues. The court, after some consideration, denied the motions.[6] The appellants then brought their appeals.

---

5. Title 22 M.R.S. § 4056(4) (2008) provides:
   **4. Child not disentitled to benefit.** No order terminating parental rights may disentitle a child to benefits due him from any 3rd person, agency, state or the United States; nor may it affect the rights and benefits that a native American derives from his descent from a member of a federally-recognized Indian tribe.

6. Among the motions denied was the mother's M.R. Civ. P. 59(e) motion. The mother asserts on appeal that the trial court erred when it denied her motion, but the issue is referred to in her brief in such a perfunctory manner that it is deemed waived. *See Mehlhorn v. Derby,* 2006 ME 110, ¶ 11, 905 A.2d 290, 293.

[¶ 32] On appeal, the cousin couple and the father have filed a joint brief, the unrelated couple has filed their own brief, and the mother has filed her own brief.

## II. LEGAL ANALYSIS

[¶ 33] The appellants raise a number of issues on appeal. We address first themes common to several arguments.

### A. No Evidentiary Hearing

■ [¶ 34] The matter was before the trial court on post-judgment motions. We have held that a court is not required to hold an evidentiary hearing, even when a party asserts that such a hearing is necessary, to receive evidence in support of a Rule 60(b) motion. *See Sargent v. Sargent*, 1997 ME 38, ¶¶ 4–5, 691 A.2d 184, 186 (holding that the court appropriately resolved a 60(b) motion without hearing, noting that "in most cases, Rule 60(b) motions are decided on the basis of affidavits and other documentary evidence usually without the necessity of a lengthy evidentiary hearing" (quotation marks omitted)); *Smith v. Kennard*, 496 A.2d 660, 662–63 (Me.1985) (holding that, despite the appellant's contention that it was imperative that the court hold an evidentiary hearing on his Rule 60(b) motion because his affidavit was not represented to be all of the evidence he intended to present to the court, the court was not required to hold an evidentiary hearing before deciding the party's Rule 60(b) motion); *see also Philbrook v. Theriault*, 2008 ME 152, ¶¶ 15–17, 957 A.2d 74, 77–78 (endorsing the trial court's request that parties submit affidavits to determine if a prima facie case has been made before subjecting the parties to a full evidentiary hearing). The court did not err in considering and deciding the

parties' Rule 60(b) motions, and related post-judgment motions, based on affidavits presenting each party's best case in support of the post-judgment motions.

### B. Appellants' Points as Newly Discovered or Newly Revealed Facts or Law

[¶ 35] Much of the support for the various Rule 60(b) motions is based on the premise that the significant information now offered was not available during the child protective proceeding and could not, with due diligence, have been discovered and presented or argued at the termination hearing. *See* M.R. Civ. P. 60(b)(2). That claim does not hold up to even superficial analysis.

#### 1. Mother's Mental Health Issues

■ [¶ 36] The mother's mental health issues were disclosed and addressed throughout the child protective proceeding, including the termination hearing. Nothing in the record suggested that the mother was incompetent to participate in those proceedings. In those proceedings the mother argued that she was addressing her mental health issues, that she was and would be a competent parent, and that she was, with assistance of counsel, competently participating in the proceedings. The mother did not change her position about her mental health issues or attempt to recant her testimony about abuse until more than a year after the final judgment when her appeal had been denied. Then, the new "spin" on her condition, incompetence, became convenient to support the effort to collaterally attack the termination judgment.[7]

[¶ 37] The record reflects that the mother was beset by conflicting emotions and, sometimes, acted in ways contrary to

---

7. The father also relied on allegations of the mother's mental incompetence at trial to support his argument for relief from judgment due to misrepresentation pursuant to M.R. Civ. P. 60(b)(3).

her own and her child's best interests. Although subject to physical and mental abuse over a long period of time, and although her child was subject to physical and mental abuse by the father, the mother: (1) continued to expose her child to domestic violence; (2) regularly allowed the perpetrator access to the child despite court orders prohibiting such access; (3) continues to have contact with her abuser; and now, (4) in concert with her abuser, seeks to recant her prior testimony and statements that the father is an abuser, claiming that these statements were fabricated as a result of her mental illness.

[¶ 38] This is a tragic pattern often seen in domestic violence cases.[8] It shows that the mother, the victim of domestic violence, faced emotional conflicts in her relationship with her abuser. But, contrary to the position argued by the mother and the father, the trial court could find that these conflicts did not render the mother mentally incompetent to participate in the proceedings and testify about the abuse. These conflicts did not require that the trial court accept the mother's efforts to recant her prior statements detailing the abuse of her and her son. The trial court properly rejected the mother's and the father's efforts to paint her as an incompetent in order to overturn the termination order.

### 2. Other New Issues

■ [¶ 39] The trust fund resources potentially available to the child and the possible availability of kin for a kinship placement were certainly known and could have been disclosed in the child protective proceeding had the parties chosen to do so.[9]

■ [¶ 40] In sum, the trial court could reasonably determine that the major points of "new" information or argument offered in support of the 60(b) motions were known to the parties during the child protective proceeding but not disclosed for strategic reasons. Rule 60(b) provides no opportunity to advance a new litigation strategy after-the-fact when an original trial strategy proved unsuccessful. *See State v. Cleaves*, 2005 ME 67, ¶ 13, 874 A.2d 872, 874; *Teel v. Colson*, 396 A.2d 529, 534 (Me.1979) (explaining that a party cannot shift ground on appeal and create new theories after being unsuccessful on a theory presented to the trial court).

### C. Other Rule 60(b) Arguments

■ [¶ 41] We review the denial of a Rule 60(b) motion for relief from judgment for abuse of discretion. *Wooldridge v. Wooldridge*, 2008 ME 11, ¶ 7, 940 A.2d 1082, 1084. We will vacate a judgment only when the denial of the Rule 60(b) motion "works a plain and unmistakable injustice" against the defendant. *Id.* (quotation marks omitted). "Rule 60(b) presupposes that a party has performed his duty to take legal steps to protect his own

---

8. *See* Tom Lininger, *Prosecuting Batterers After* Crawford, 91 Va. L.Rev. 747, 751, 768–71 (2005) (discussing why it is not uncommon for a victim of domestic violence to recant prior statements or refuse to cooperate in the prosecution of their abusers); Jennice Vilhauer, *Understanding the Victim: A Guide to Aid in the Prosecution of Domestic Violence*, 27 Fordham Urb. L.J. 953, 956–60 (2000); *see also Fowler v. State*, 829 N.E.2d 459 (Ind. 2005); *Brown*, 94 P.3d 574.

9. Disclosure that a substantial trust fund or other resources could be available to the child during the child protective proceeding might have caused the Department or the trial court to seek access to some of those allegedly available resources to support expenditures undertaken by the State on behalf of the child.

▮▮▮▮▮▮▮▮▮▮▮

interests in the original litigation." *McKeen & Assocs. v. Dep't of Transp.*, 1997 ME 73, ¶ 4, 692 A.2d 924, 926 (emphasis in original). The appellant has the burden of showing that the trial court "exceeded the bounds of the reasonable choices available to it, considering the facts and circumstances of the particular case and the governing law." *Ezell v. Lawless*, 2008 ME 139, ¶ 19, 955 A.2d 202, 207.

▮ [¶ 42] Here, the court was not compelled to find that the appellants had met their burden of demonstrating entitlement to relief pursuant to any subparagraph of Rule 60(b). The court did not abuse its discretion, or err as a matter of law, in denying the Rule 60(b) motions. Additionally, we affirm the court's denial of the mother's and father's motions for relief from judgment, filed pursuant to M.R. Civ. P. 60(b)(1), (2) or (3), on the alternate ground that the parties' motions were untimely as they were filed more than one year after the October 2007 entry of final judgment. *See* M.R. Civ. P. 60(b); *Tomer v. Me. Human Rights Comm'n*, 2008 ME 190, ¶ 8 n. 3, 962 A.2d 335, 338 (noting that an appellate court may affirm a trial court's judgment on grounds different from those upon which the trial court relied).

D. Issues Specific to Particular Appellants

[¶ 43] Despite raising the issue in their notice of appeal, the cousin couple have not argued in their joint brief with the father that the court erred in denying their motion to intervene or for interested-person status, and any appeal of that issue is deemed waived.[10] *See Holland v. Sebunya*, 2000 ME 160, ¶ 9 n. 6, 759 A.2d 205,

209. Further, the claim that they should have been considered for a kinship placement, not having been presented during the termination proceeding, is deemed waived.

▮ [¶ 44] Finally, because we affirm the court's denial of the mother's and father's motions for relief from judgment, the unrelated couple's appeal is moot. *See Roop v. City of Belfast*, 2008 ME 103, ¶ 3, 953 A.2d 374, 375. Regardless, contrary to the unrelated couple's contention, the court did not err as a matter of law or abuse its discretion in denying their motions to intervene and for interested-person status. *See* M.R. Civ. P. 24; 22 M.R.S. § 4005–D(1)(C), (2), (5) (2008). No matter how well-intended, an unrelated individual or couple, such as the unrelated couple here, cannot intervene in and join any adoption proceeding that interests them to compete with other applicants to adopt a child. A special relationship with the child must be demonstrated. *See* M.R. Civ. P. 24(a)(2); 22 M.R.S. § 4005–D (2008). Were the law otherwise, adoption proceedings involving attractive children, such as children who might gain access to a large trust fund, could become a free-for-all of opportunistic litigation. The court properly denied the unrelated couple's effort to intervene or gain interested-person status in this proceeding.

The entry is:

Judgments affirmed.

---

**10.** To the extent that the cousin couple's "standing" argument was intended to address the issue of intervention: (1) such an argument was undeveloped and is deemed waived, *see Holland v. Sebunya*, 2000 ME 160, ¶ 9 n. 6, 759 A.2d 205, 209; and (2) it was based on arguments of newly-discovered evidence that are deemed waived.