MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2019 ME 119
Docket:       Ken-19-75
Submitted
  On Briefs:  July 18, 2019
Decided:      July 25, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

## IN RE CHILD OF REBECCA J.

PER CURIAM

[¶1]  Rebecca J. appeals from a judgment of the District Court (Waterville, *Stanfill, J.*) terminating her parental rights to her child.  The mother challenges the sufficiency of the evidence supporting the court's findings of parental unfitness and its determination that termination of her parental rights is in the child's best interest.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  On August 18, 2017, the Department of Health and Human Services filed a child protection petition as to both parents,[1] alleging that the mother had a history of Department involvement as to her two older children and that the mother had not alleviated the circumstances that necessitated the

---

[1] The father later consented to the termination of his parental rights, and he is not a party to this appeal.  *See* 22 M.R.S. § 4055(1)(B)(1) (2018).  We therefore limit our discussion to the facts and procedure relevant to the mother.

2

Department's ongoing involvement as to her older children.[2] On November 28, 2017, the court entered an agreed-to jeopardy order, incorporating the findings from the jeopardy order issued in prior child protection matters regarding the mother's two older children. The court found that the mother did not adequately supervise the children; the mother's household was chaotic and dirty; the older children—one of whom was a nonambulatory infant at the time—sustained bruising and other physical injuries while in the mother's care, which the mother denied having noticed and could not explain; and the "instability that has plagued [the mother] from the onset of [the older children's] case persists." The court entered agreed-to judicial review and permanency planning orders on March 30, 2018; June 11, 2018 (*Davis, J.*); and November 28, 2018 (*Stanfill, J.*), maintaining custody of the child with the Department.

[¶3] Meanwhile, on July 3, 2018, the Department petitioned for the termination of the mother's parental rights. After a contested hearing, by judgment dated February 11, 2019, the court made the following findings of fact, which are supported by competent record evidence.

---

[2] Because the terms of a safety plan placed the child at issue here with other family members at that time, the Department did not seek a preliminary protection order. *See* 22 M.R.S. § 4034 (2018).

[The mother] is the biological mother to three children [who] have different fathers and are the subject of three separate child protection cases. [The middle child] resides with his father. . . . [P]arental rights of both parents [to the oldest child] have been terminated. . . .

When [the youngest child, who is the subject of the present matter,] was born . . . , it appeared that [the mother] was making good progress in her reunification with the other children. They were placed with her in March 2017 for a trial placement, and so [this child] also remained in the home. Problems began to arise again, however, and by May 2017 all the children were again removed from the home. . . .

The reasons for the original removal of [the two older children] in 2016 included, among other things, unexplained and likely inflicted bruising to [the middle child] while in [the mother's] care. When all three children were removed [in] May 2017, there were again unexplained bruises on both [older children]. While there has never been a finding that [the mother] inflicted the injuries, it is very concerning that they occurred while in her care on more than one occasion and that she not only could not explain the injuries but never noticed them. Because [the mother] still will not recognize that 2 of her children were injured in her care, she cannot take responsibility for either her actions or the conditions that allowed the injuries to occur.

In addition to the injuries, the children evidenced general neglect when removed. . . . When [the youngest child] came into care, [she was] ill . . . , sufficiently so that she was seen in the ER. The fact that a child is ill is not necessarily evidence of neglect, but again it is concerning that [the mother] did not appear to recognize the extent of the illness. While [the mother] called to authorize the treatment at the hospital, she did not go to the hospital or thereafter inquire how it went.

. . . .

[The mother's] detached parenting style continues to this day. She rarely asks about [the child's] life during the week. She does not go to [the child's] appointments and rarely inquires about them. When [the child] was in her care, [the mother] tended to leave her in the car seat and had little interaction with her. Current visits are not much different: she brings snacks and will play with [the child], but there is little physical affection or actual parenting. [The mother] does not pick her up, hug or kiss her. . . . [I]t is clear that [the child] does not view [the mother] as her parent [and she] is more bonded to [her foster mother] than to [the mother]. In short, . . . [the mother] appears to be unable to fully function at the level necessary to be a parent. She wants to connect with [the child], but does not appear to be able to do so.

Moreover, these circumstances are unlikely to change. Further parenting education and counseling would not be helpful as [the mother] does not accept that she has any parenting deficits or that the two older children were injured in her care. No change can occur absent taking responsibility for the past.

. . . .

[The child] has been out of [the mother's] home since she was a little more than 3 months old . . . . She has lived with [the foster parents] all that time, and they have provided good care. She was withdrawn and rigid and would not make eye contact when she first came into their home. She would not take a nap or sleep through the night. She would scream when [the foster mother] tried to bathe her or would leave her. It took months to get her to do these things. Now, she is happy and playful and always on the move. She sleeps through the night and the other issues have resolved. She is putting words together. She calls [the foster parents] Mom and Dad. She is integrated into and bonded with the family.

[The child] deserves permanency. Disruption of her placement would clearly be traumatic for her. . . .

(Footnotes omitted.)

[¶4]  The court terminated the mother's parental rights on the grounds that the mother is unable to protect the child from jeopardy and unable to take responsibility for the child in a time reasonably calculated to meet the child's needs and that termination is in the child's best interest.  *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i), (ii) (2018).  The mother timely appeals.  *See* 22 M.R.S. § 4006 (2018); M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

[¶5]  To terminate parental rights without the parent's consent, the court must find, by clear and convincing evidence, at least one ground of parental unfitness and that termination of the parent's rights is in the child's best interest.  22 M.R.S. § 4055(1)(B)(2)(a), (b); *In re Zianna G.*, 2017 ME 226, ¶ 2, 174 A.3d 889.  The mother challenges the sufficiency of the evidence supporting the termination of her parental rights on the grounds that the Department never filed a rehabilitation and reunification plan and did not offer her sufficient services.  We review the court's factual findings of unfitness and best interest for clear error, and we will uphold those findings if there is any competent record evidence to support them.  *In re Zianna G.*, 2017 ME 226, ¶¶ 2,

6, 174 A.3d 889.  We review the court's ultimate determination of best interest for an abuse of discretion.  *Id.* ¶ 6.

[¶6]  Pursuant to 22 M.R.S. § 4041 (2018), the Department is obligated, with the participation of the parent, to develop a rehabilitation and reunification plan that sets out, inter alia, the reasons the child was removed from the home, the changes the parent must implement to eliminate jeopardy to the child, and the services the Department will provide that must be completed before the child may be returned to the parent's custody.  22 M.R.S. § 4041(1-A)(A)(1); *see In re Thomas D.*, 2004 ME 104, ¶¶ 23-26, 854 A.2d 195.  The rehabilitation and reunification plan is the "roadmap by which the Department and a parent are expected to cooperatively seek to rehabilitate the conditions that resulted in jeopardy to the child."  *In re Thomas D.*, 2004 ME 104, ¶ 26, 854 A.2d 195.

[¶7]  The Department concedes that it did not file a rehabilitation and reunification plan with the court, contrary to the requirements of section 4041.[3]  Nevertheless, the court is not precluded from finding parental unfitness

---

[3] Two of the judicial review orders stated that a reunification plan had already been filed with the court.  The record contains no such plan, however, and the docket notes no such filing.  At the termination hearing, the Department caseworker testified that the Department used the same reunification plan in this matter as the one already in place as to the two older children.  The court responded, "[J]ust as an FYI, there is no reunification plan in this file.  Doesn't mean there aren't any in other files."  Although the court took judicial notice of the orders entered in the prior child

because the Department's compliance with section 4041 is not a factual predicate to the termination of parental rights. *See In re Child of Heather W.*, 2018 ME 31, ¶ 11, 180 A.3d 661; *In re Doris G.*, 2006 ME 142, ¶¶ 16-17, 912 A.2d 572; *In re Thomas D.*, 2004 ME 104, ¶ 28, 854 A.2d 195. When the parent is otherwise aware of what she needs to address to reunify with her child, we have concluded that the lack of strict compliance with section 4041 is relevant to a determination of parental unfitness but is not a bar to the termination of that parent's rights. *In re Thomas D.*, 2004 ME 104, ¶ 28, 854 A.2d 195; *see In re Child of Domenick B.*, 2018 ME 158, ¶ 7, 197 A.3d 1076 ("Throughout the entirety of this case, the father was on notice that addressing his mental health concerns and remaining sober were the court's and the Department's main concerns."); *In re Doris G.*, 2006 ME 142, ¶¶ 12, 15, 912 A.2d 572 (concluding that the jeopardy order, judicial review orders, and the Department's cease reunification motion sufficiently informed the parent of the issues that needed to be addressed). "Only when the Department failed to develop a formal reunification plan, and the parent's rights were nevertheless terminated for failure to comply with specific reunification

---

protection matters, it did not take judicial notice of the rehabilitation and reunification plan filed in those cases.

8

obligations never communicated to that parent, have we vacated a judgment terminating parental rights." *In re Doris G.*, 2006 ME 142, ¶ 17, 912 A.2d 572; *accord In re Thomas D.*, 2004 ME 104, ¶¶ 27-35, 42, 854 A.2d 195.

[¶8]  Here, the mother was not found to be unfit based on her failure to comply with certain specific requirements that were never communicated to her.  Indeed, the court expressly found that the mother had complied with everything the Department required: "[The mother] is a hard worker and is employed.  She has safe and . . . stable housing and has transportation.  She has completed many DVDs for parenting education.  She comes to her weekly visits and brings snacks and the like.  In short, she has done the services asked of her. . . ."

[¶9]  Rather, the mother's unfitness was based on her continuing refusal to acknowledge or take responsibility for the multiple instances in which her older children were injured while in her care—and the likelihood that such injuries would recur if the children were again in her care—as well as her inability to bond with her child and her neglectful parenting style, none of which was alleviated by the mother's completion of all of the Department's proffered services.[4]

---

[4] In the agreed-to judicial review orders, the court found that the Department made reasonable efforts to rehabilitate and reunify the family by providing "Case management service, HCI services,

[¶10] Moreover, the mother was on notice that these were the continuing impediments to the reunification of her family. The jeopardy order informed the mother that the same grounds of jeopardy found in the two prior child protection cases were still at issue as to this child, including, as the State argues, "a sharp focus on the injuries that her eldest children suffered while in her care." The jeopardy order, judicial review orders, and the order after a summary preliminary hearing in the two prior child protection cases, as well as a series of child abuse evaluations from 2016 and 2017, establish the Department's—and the court's—longstanding emphasis on the mother's inability to acknowledge or protect her children from the injuries they have sustained while in her care. The Department also relied on the rehabilitation and reunification plans that it filed in the child protection matters as to the two older children, and it was the mother's parenting of the older children that provided the bulk of the evidence regarding her unfitness to care for the child now at issue.

[¶11] We conclude that there is sufficient record evidence to support the court's findings that the mother is unable to protect the child from jeopardy and

---

monthly contact, caseworker services, parenting classes, case management, Family Team Meetings, Supervised visits, [and] counseling," as well as placement support and housing assistance.

unable to take responsibility for the child within a time reasonably calculated to meet the child's needs, including the evidence that the mother is unable to bond with her child, displays a general lack of interest in or affection for her child, and still has not adequately addressed the multiple occasions in which her older children sustained unexplained injuries while in her care. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii). There was also competent evidence to support the court's finding that termination of the mother's parental rights is in the child's best interest, and we discern no abuse of discretion in that best interest determination. *See In re Zianna G.*, 2017 ME 226, ¶¶ 2, 6, 174 A.3d 889. Although the rehabilitation and reunification plan is the "centerpiece" of the child protection proceeding, *In re Thomas D.*, 2004 ME 104, ¶ 26, 854 A.2d 195, compliance with the plan is not the final word on the ability to parent; as this case demonstrates, a parent may comply with everything asked of her by the Department yet remain unable to safely parent her child. *See In re Skyler F.*, 2017 ME 137, ¶¶ 2-3, 166 A.3d 124 (holding, notwithstanding that the parents cared deeply for their children, had obtained suitable housing, and had "complied superficially with most reunification requirements," that the parents still could not parent their children without supervision).

The entry is:

Judgment affirmed.

Julian Richter, Esq., Richter Law, LLC, Gardiner, for appellant mother

Aaron M. Frey, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Waterville District Court docket number PC-2017-29
FOR CLERK REFERENCE ONLY