MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2019 ME 162
Docket:       Cum-19-250
Argued:       November 7, 2019
Decided:      December 10, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## IN RE CHILD OF SHERRI Y.

MEAD, J.

[¶1]    Sherri Y. appeals from a judgment of the District Court (Portland, *Eggert, J.*) terminating her parental rights to her child.  The mother challenges the sufficiency of the evidence with regard to the court's finding that she is unfit within the meaning of 22 M.R.S. § 4055(1)(B)(2)(b)(i) and (ii) (2018); disputes the court's determination that termination of parental rights was in the child's best interest, *see* 22 M.R.S. § 4055(1)(B)(2)(a) (2018); and asserts that the court violated her constitutional due process rights by refusing to acknowledge that she was incompetent to participate in the termination hearing.  We affirm the judgment.

## I. BACKGROUND

[¶2]  The following facts are drawn from the court's findings, which are supported by the evidence, and from the procedural record.  *See In re Child of Scott A.*, 2019 ME 123, ¶ 2, 213 A.3d 117.  On December 20, 2017, the

2

Department of Health and Human Services filed a petition for a child protection order. On January 3, 2018, the Department requested and was granted a preliminary child protection order (Portland, *Field, J.*), *see* 22 M.R.S. § 4034 (2018), and the child was temporarily placed with the Department and entered foster care.

[¶3] With the parties' agreement, the court (Portland, *Eggert, J.*) entered a jeopardy order on March 5, 2018, finding that the mother had been unable to care for the child because she had suffered severe brain injuries, had mental health and substance use issues, and lacked stable housing. *See* 22 M.R.S. § 4035 (2018). On January 10, 2019, the Department petitioned to terminate the mother's and father's[1] parental rights, asserting that neither the mother nor father could provide a safe environment and stable housing for the child. *See* 22 M.R.S. § 4052 (2018). On March 6, 2019, the father consented to the termination of his parental rights.

[¶4] On May 14, 2019, the court held a one-day hearing on the petition to terminate the mother's rights, *see* 22 M.R.S. § 4054 (2018). In two orders issued May 17, 2019, the court removed the child's grandfather as guardian[2]

---

[1] The child's father is not a party to this appeal.

[2] The child's maternal grandfather had been the child's legal guardian since the child's birth. He is also the mother's legal guardian.

and terminated the mother's parental rights. It also declared the child's permanency plan to be adoption. In regard to the mother, the court determined that there was clear and convincing evidence that the mother failed to alleviate jeopardy and that circumstances were unlikely to change within a time reasonably calculated to meet the child's needs, *see* 22 M.R.S. § 4055(1)(B)(2)(b)(i); that she continued to be unable to take responsibility for the child in a time reasonably calculated to meet the child's needs, *see* 22 M.R.S. § 4055(1)(B)(2)(b)(ii); and that it would be in the child's best interest to terminate her parental rights, *see* 22 M.R.S. § 4055(1)(B)(2)(a). The court based its determination on the following factual findings:

> [The child] was placed in the guardianship [of his grandfather] because his mother . . . was unable to care for him. [The mother] continued to live with her parents and [the child] after the guardianship was granted. On December 11, 2017, [the grandfather] was evicted from his home and he and four other unrelated individuals were served with no trespass orders to remove them. There was no report that [the mother] was living there, but [the child] was and he was placed by [the grandfather] with [the grandfather's former daughter-in-law] . . . . During this time the Department of Health and Human [S]ervices had already been investigating a report from [the child's] school concerning his behaviors in school and a Petition was filed with the Court on December 20, 2017. . . .
>
> [The child] is an incredibly high needs child. His behavior at school . . . prompted a referral to the Department in November 2017 . . . . A recent foster parent . . . testified that [the child] required

a lot of work which was essentially one on one attention on a 24/7 basis. A caregiver could not leave him alone for any length of time and expect he would be safe. . . .

[The child] is presently placed with . . . a therapeutic foster parent . . . . She is an elderly and experienced foster parent who would not be considered for adoption of [the child]. She has a calming influence on [the child] who appears to be doing well for the time being in her care.

[The child's] guardian [his grandfather] has had no contact with [the child] for over a year. He is presently staying with friends and does not have any permanent place to live. He was not really able to care well for [the child] after his wife died in 2016, and [the child's] present emotional, medical, and psychological condition may well be the result of that lack of good care.

. . . Compounding [the mother's] inability to care for [the child] was a brain injury suffered in 2012 from an assault. She is now subject to seizures and admits she has poor impulse control as demonstrated in the courtroom during this hearing. More importantly, she has demonstrated her inability to visit with [the child] and adequately interact with him on a consistent and appropriate basis.

Mother was subject to a reunification plan that required her to undergo a substance abuse evaluation, a mental health evaluation, obtain a medication manager, obtain safe and stable housing, have a neuropsychological evaluation, and regularly attend supervised visits with [the child]. She does have a medical manager, and has done some counseling but has not adequately performed the other requirements of the plan. She has attended visits but not all that have been scheduled and often ends them early. She is not always appropriate at those visits, and has not been able to progress beyond the once a week supervised visits. At those supervised hearings she demonstrated that she could not be left alone and unsupervised with [the child].

(Footnote omitted).  The mother timely appealed the judgment terminating her parental rights.  *See* 22 M.R.S. § 4006 (2018); M.R. App. P. 2B(d)(1).

## II.  DISCUSSION

### A.  Sufficiency of the Evidence

[¶5]  The mother contends that the court lacked sufficient evidence to justify the termination of her parental rights.  Terminating a parent's rights without her consent requires finding by clear and convincing evidence "at least one ground of parental unfitness and that termination of the parent's rights is in the child's best interest."  *In re Child of Rebecca J.*, 2019 ME 119, ¶ 5, 213 A.3d 108; *see* 22 M.R.S. § 4055(1)(B)(2) (2018).  We review "the court's factual findings of unfitness and best interest for clear error, and we will uphold those findings if there is any competent record evidence to support them."  *In re Child of Rebecca J.*, 2019 ME 119, ¶ 5, 213 A.3d 108.  "Evidence is clear and convincing when the court could reasonably have been persuaded that the required factual findings were proved to be highly probable."  *In re B.P.*, 2015 ME 139, ¶ 16, 126 A.3d 713 (quotation marks omitted).  We review for an abuse of discretion the court's ultimate determination that termination is in the child's best interest.  *In re R.M.*, 2015 ME 38, ¶ 7, 114 A.3d 212.

6

[¶6]   Regarding the court's unfitness finding, the mother's challenge appears to be predicated entirely upon her due process argument that she was entitled to a competency inquiry, discussed *infra* Section II.B; she fails to explain how her competency argument relates in any way to her claim that the court lacked sufficient evidence to find her unfit.

[¶7]   Concerning the court's best interest finding, the mother asserts that the court failed to make any findings specific to that element of the termination standards.  *See* 22 M.R.S. § 4055(1)(B)(2)(a).  However, a court may draw from the same findings in making its unfitness and best interest determinations. Although parental unfitness and best interest of the child are two separate tests, the court "may consider the findings of parental unfitness as relevant to best interests.  For example, the parent's inability to protect the child from jeopardy is relevant to the child's best interest[]."  *In re Ashley A.*, 679 A.2d 86, 89 (Me. 1996).  Further, the structure of the court's order, which first presented all of its factual findings and then rendered each of its legal determinations, supports the conclusion that the court's findings underlie both elements required to terminate a parent's rights.

[¶8]   At the termination stage, a court determines a child's best interest by considering factors including "the needs of the child, the child's age,

attachment to relevant persons, periods of attachment and separation, ability to integrate into substitute placement or back into [the] parent's home, and the child's physical and emotional needs." *Id.*; *see* 22 M.R.S. § 4055(2). The court heard evidence demonstrating the child's high level of need, the many foster homes that he lived in, and his comparatively strong performance during periods of routine and consistency. *See In re Jason B.*, 552 A.2d 9, 11 (Me. 1988) ("Because there is clear and convincing evidence in the record to support the finding, the trial court properly determined that it is in the best interests of the children that . . . parental rights . . . be terminated."). This evidence is reflected in the court's factual findings, which are supported by the record. The court was entitled to find that its findings were "highly probable." *In re Breauna N.,* 1999 ME 191, ¶ 19, 742 A.2d 911 (quotation marks omitted).

B.     Due Process

[¶9] In three interrelated arguments, the mother contends that the court violated her due process rights by (1) failing to examine her competency, (2) declining to postpone the termination hearing when she began to struggle in the courtroom, and (3) failing to assign her a guardian. We conclude that no violation of the mother's due process rights occurred.

[¶10]  The mother did not raise the issue of competency during the termination hearing, and the mother does not tender a claim of ineffective assistance of counsel on appeal.  We apply the obvious error standard of review to her constitutional due process claim.  *See In re Child of Lacy H.*, 2019 ME 110, ¶ 9, 212 A.3d 320.  Obvious error is "seriously prejudicial error tending to produce a manifest injustice."  *Id.* (quotation marks omitted).

[¶11]  The mother acknowledges that on several occasions during the hearing she spoke out of turn.  On one such occasion, the court temporarily removed her from the courtroom after she interrupted a caseworker's testimony to dispute one of the caseworker's statements.  After the mother was removed from the courtroom for a short recess, her attorney assured the court that the mother had "calmed down" a "significant amount."  Nevertheless, after hearing testimony from the caseworker and the child's grandfather, the court stated, "Mother seems to be sort of out of control at this point, and I'm concerned about trying to put her on the stand in that condition," and proposed reconvening at a later date.  After the attorneys expressed their schedule conflicts, however, the court reconsidered and elected to proceed with the hearing.  The mother also identifies an instance in which her lawyer had to

refocus her while discussing the same issue that had triggered her earlier interjection.

[¶12]  In addition to these examples, the mother isolates a number of other exchanges at the hearing that speak to her mental health concerns generally.  These include references to her time spent at a psychiatric hospital, her traumatic brain injury and history of seizures, and portions of her own testimony in which she experienced difficulty explaining how her medical conditions affected her daily life.

[¶13]  We discussed the issue of a parent's competency in relation to a termination hearing in *In re David H.*, 2009 ME 131, ¶ 16, 985 A.2d 490.  We said,

> Review of the termination hearing record, including the mother's testimony, discloses no event or statement that might have suggested to the court that the mother *could not answer questions appropriately*, *did not understand the nature and consequences of the proceeding*, or was otherwise *incompetent to assist counsel and participate* in the proceedings.

*Id.* (emphasis added).  We noted that, like in the present matter, "[a]t the hearing, the mother, assisted by counsel, emphasized her competence, not her incompetence." *Id.*

[¶14]  We revisited the issue of competency in the similar context of a parent's *consent* to termination in *In re H.C.*, 2013 ME 97, ¶ 16, 82 A.3d 80.  In

that case, we held that in order for a parent to prevail on a claim of incapacity, she "must prove that [she] was unable to reasonably understand the nature and consequences of the consent." *Id.* We further concluded that the District Court may "inquire into whether a party's act was a departure from the normal pattern of similar transactions." *Id.* In *H.C.*, we decided that the parents' consent to termination "was not a departure from prior related decisions" because their "cognitive limitations were disclosed to the court throughout the child protection process." *Id.* Similarly, in the present matter, the court was familiar with the mother's health conditions.

[¶15] None of the above instances noted by the mother demonstrates that she lacked the ability to understand the nature and consequences of the hearing or to participate in it. In fact, the mother's own statements suggest that she well understood the purpose and relevance of the termination hearing. During her testimony, the mother demonstrated her familiarity with the child's particular medical and behavioral conditions, and she asserted that she knew how to "take care of [her child's] needs." Suffering from mental health issues does not necessarily render one incompetent to participate in a hearing. *See In re David H.*, 2009 ME 131, ¶ 28, 985 A.2d 490. We have observed that "having limited cognitive functioning is not the same as being incompetent to proceed

in [a child protection] matter." *In re Child of Mercedes D.*, 2018 ME 149, ¶ 16, 196 A.3d 888 (quotation marks and alterations omitted). The incapacity inquiry focuses instead on a parent's ability to grasp the consequences of the present proceeding.

[¶16] Here, like in *David H.* and in *H.C.*, the court was aware of the mother's mental health issues, and the mother did not raise the issue of incompetence prior to this appeal. *See In re H.C.*, 2013 ME 97, ¶ 16, 82 A.3d 80 ("At no time prior to this appeal did either parent raise any concerns about his or her mental capacity."); *In re David H.*, 2009 ME 131, ¶ 36, 985 A.2d 490 ("The mother's mental health issues were disclosed and addressed throughout the child protective proceeding, including the termination hearing."). We conclude that on this record the mother has failed to demonstrate that she was unable to understand the nature and consequences of the termination hearing, could not answer questions, or was otherwise incompetent to participate in the hearing. *See In re H.C.*, 2013 ME 97, ¶ 16, 82 A.3d 80; *In re David H.*, 2009 ME 131, ¶ 36, 985 A.2d 490. The court was not required to make a specific inquiry as to the mother's competency.[3]

---

[3] Moreover, the mother's own guardian, her father, attended the hearing and made no request for a competency review.

[¶17] Next, the court did not violate the mother's due process when it decided not to terminate the hearing. The mother admitted that her brain injury impairs her ability to regulate emotions. However, intermittent lack of emotional control is not the same as incapacity. *See In re David H.*, 2009 ME 131, ¶¶ 37-38, 985 A.2d 490. The fact that the court considered postponing the hearing before proceeding does not demonstrate that the mother was incompetent to participate in the hearing; rather it reflects the court's sensitivity toward the mother based upon her emotional responses. We conclude that, on this record, due process did not require the court to continue the hearing.

[¶18] Finally, due process did not require the court to sua sponte appoint an additional support for the mother in the form of a guardian ad litem. The mother's counsel did not request a guardian ad litem for the hearing, and the court had no evidence before it suggesting that a guardian ad litem would have served a purpose or guided the mother more effectively through the hearing than her lawyer could. *See Child of Mercedes D.*, 2018 ME 149, ¶ 16, 196 A.3d 888 (concluding that, where the mother's counsel moved for a continuance to request appointment of a guardian ad litem, counsel failed to demonstrate the mother's need for a guardian).

The entry is:

Judgment affirmed.

---

Kristina Dougherty, Esq. (orally), Chester & Vestal, P.A., Portland, for appellant mother

Aaron M. Frey, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket number PC-2017-92
FOR CLERK REFERENCE ONLY