MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2020 ME 87
Docket:        Ken-20-11
Submitted
  On Briefs:   May 28, 2020
Decided:       June 9, 2020

Panel:         GORMAN, JABAR, HUMPHREY, HORTON, and, CONNORS, JJ.

## IN RE CHILD OF LOUISE G.

PER CURIAM

[¶1] Louise G. appeals from a judgment of the District Court (Waterville, *Stanfill, J.*) terminating her parental rights to her child, pursuant to 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii) (2020). The mother argues that the court's findings of parental unfitness and the child's best interest are not supported by sufficient evidence. Concluding that the evidence supports the court's findings, we affirm the judgment.

### I. BACKGROUND

[¶2] The following facts are drawn from the court's findings, which are supported by competent record evidence, and from the procedural record. *In re Child of Radience K.*, 2019 ME 73, ¶ 2, 208 A.3d 380.

[¶3] In 2011, shortly after the child's birth, the Department of Health and Human Services filed a petition for a child protection order after having learned

from medical providers that the child's parents struggled to meet the child's medical needs. *See* 22 M.R.S § 4032 (2020). The petition was later dismissed when the parents demonstrated that they could adequately care for the child. A second petition followed on April 2, 2018. The court (*Sparaco, J.*) consequently issued an order temporarily placing the child in the Department's custody. *See* 22 M.R.S. §§ 4034(2), 4036(1)(F) (2020). On April 12, 2018, the parents appeared at a summary preliminary hearing and exercised their rights to contest the temporary order. *See id.* § 4034(4). The court (*Nale, J.*) determined that the child was in immediate risk of serious harm in the custody of the parents and ordered that the preliminary protection order remain in place.

[¶4] Following another contested hearing on July 18 and 19, 2019, the court (*Stanfill, J.*) issued a jeopardy order as to both parents. The court, however, directed the Department to increase the mother's visitation time immediately, while ordering the mother to complete a diagnostic evaluation. This process spanned several months and eventually proved unfruitful.

[¶5] On September 3, 2019, the Department filed a petition to terminate the mother's parental rights. *See* 22 M.R.S. § 4052 (2020). On October 8, 2019, the mother's attorney—concerned about the mother's capacity to understand

the legal procedures and attendant consequences of the termination proceeding—filed a motion seeking the appointment of a guardian ad litem for the mother. *See* M.R. Civ. P. 17(b). The court granted the motion.

[¶6] A hearing on the petition to terminate the mother's parental rights was held on December 10, 2019.[1] *See* 22 M.R.S. § 4054 (2020). On December 12, 2019, the court found that the State had proved by clear and convincing evidence that the mother was an unfit parent on two statutory grounds.[2] Specifically, the court found that the mother is unable to protect the child from jeopardy and these circumstances are unlikely to change in a time reasonably calculated to meet the child's needs, and that the mother was unable to take responsibility for the child within a time reasonably calculated to meet the child's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii). The court made those findings, and found that termination is in the best interest of the child, *see id.* § 4055(1)(B)(2)(a), based on the following findings of fact:

> [The child] has fairly significant . . . issues [and] . . . came into care . . . after witnessing and being involved in repeated incidents of domestic violence in the home. . . .
>
> [The child] often appeared at school tired, dirty and sick. Her hair would be matted and her clothes would be stained and too

---

[1] Prior to these proceedings, the father—who is not a party to this appeal—entered a conditional consent to terminate his parental rights.

[2] The Department alleged three grounds of parental unfitness.

small. . . . When [the mother] was offered feedback and assistance with these issues she became emotionally reactive and dysregulated. She took the expressed concern as a personal affront and indictment on her parenting.

. . . .

[The mother] had expressed a willingness to engage in services and sever her relationship with [certain individuals], and appeared to have turned a corner. The court was hopeful that reunification could proceed relatively quickly.

Unfortunately, that did not happen. [The mother] has continued to be emotionally reactive and dysregulated, has made few changes, and continues to have little or no insight into the reasons why [the child] came into care. . . .

Although [the mother] was now regularly attending visits and appeared to take direction, little progress was being made. She took direction but did not alter behavior over the long term. . . . She had limited ability to remain child-focused or to engage with [the child].

. . . .

[The mother] was not in any mental health treatment during the [Home and Community Therapy] services until the last couple of weeks. She agreed to participate in a [Court Ordered Diagnostic Evaluation], but did not appear for the first two that were scheduled. She finally attended the evaluation . . . in May 2019 but did so quite reluctantly.

The CODE evaluation is fairly pessimistic with regard to [the mother's] ability to meet [the child's] needs or protect her. Specifically, [the evaluating doctor] diagnosed [the mother] with paranoid personality disorder—a diagnosis that means the issues are ingrained, pervasive, and chronic. He also diagnosed panic disorder.

. . . .

In addition to [the mother's] significant and long-standing mental health issues as outlined above, she also has a history of engaging with and exposing [the child] to unsafe individuals. . . . This is another area where [the mother] lacks protective capacity.

There is no question that [the mother] loves [the child] and wants what is best for her. . . .

. . . .

[The child] has been in foster care for 20 months. [The mother] has just started back in therapy. She has little insight into either her own condition or [the child's] needs. It is clear to this court that it would be a long time, if ever, before she is able to fully care for [the child].

. . . .

In addition, the court finds that termination is in the best interest of the child. . . .

Although she switched placements a few times, [the child] has been with the [current foster] family for the last 14 months. It is clear that [the child] does not tolerate uncertainty and alterations in her routine; her behavior escalates when that occurs. This little [child] needs, and deserves, permanency now. [The child] deserves to be freed for adoption and to have a forever home where [the child] can receive the care [the child] needs and can grow and thrive in the future. [The child] cannot wait any longer.

Moreover, without progress in reunification [the child] is transferring her attachment to [the] foster parents. [They] have been vigilant and constant in meeting [the child's] needs . . . and [the child] loves them very much. . . . [The child] calls them "mom" and "dad." [The child] has been thriving in their care, and has made substantial gains both in learning and in [the child's] behaviors. Although not bound by [the child's] preference, [the child] is saying [the child] does not want to leave that home. [The child] is part of their family, and they would like to adopt [the child]. While the [foster parents] will hopefully adopt [the child], it is not the

linchpin of this decision. The best plan for [the child] is adoption by an appropriate forever family, whoever it may be.

[¶7] The mother appeals. *See* 22 M.R.S. § 4006 (2020).

## II. DISCUSSION

[¶8] The mother argues that the record evidence does not support the court's termination order. "We will set aside a finding of parental unfitness only if there is no competent evidence in the record to support it, if the fact-finder clearly misapprehends the meaning of the evidence, or if the finding is so contrary to the credible evidence that it does not represent the truth and right of the case." *In re Child of Katherine C.*, 2019 ME 146, ¶ 2, 217 A.3d 68 (quotation marks omitted). We review a trial court's evaluation of a child's best interest for an abuse of discretion and its attendant factual findings for clear error. *See In re Child of Rebecca J.*, 2019 ME 119, ¶ 5, 213 A.3d 108.

[¶9] It is well established that "[t]erminating a parent's rights without her consent requires finding by clear and convincing evidence at least one ground of parental unfitness and that termination of the parent's rights is in the child's best interest." *In re Child of Sherri Y.*, 2019 ME 162, ¶ 5, 221 A.3d 120 (quotation marks omitted). A trial court can deem evidence "clear and convincing when the court could reasonably have been persuaded that the required factual findings were proved to be highly probable." *Id.*

[¶10]  We view the facts, "and the weight to be given them, through the trial court's lens, and giv[e] the court's judgment substantial deference."  *In re Mathew H.*, 2017 ME 151, ¶ 2, 167 A.3d 561 (quotation marks omitted).  Here, the court's findings—as they relate to the mother's unfitness—were supported by the ample evidentiary record, such as evidence regarding the mother's long-standing health issues, her inability to remain child-focused, her unremitting dysregulation, and the child's need for consistency, all of which are borne out by the guardian ad litem report.

[¶11]  Based on competent evidence in the record, the court also found by clear and convincing evidence that termination of the mother's parental rights is in the child's best interest.  *See* 22 M.R.S. § 4055(1)(B)(2)(a); *In re Child of Rebecca J.*, 2019 ME 119, ¶ 11, 213 A.3d 108; *In re Child of Kimberlee C.*, 2018 ME 134, ¶ 5, 194 A.3d 925 ("Deference is paid to the District Court's superior perspective for evaluating the weight and credibility of evidence.") (alteration omitted) (quotation marks omitted)).  The court found that the child has a need for permanency after spending more than fourteen months in foster care, and we discern neither error nor abuse of discretion in that determination.

The entry is:

Judgment affirmed.

8

Kristina Dougherty, Esq., Chester & Vestal, P.A., Portland, for appellant mother

Aaron M. Frey, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Waterville District Court docket number PC-2018-18
FOR CLERK REFERENCE ONLY